STATE EX REL. WISCONSIN ELECTRIC POWER CO., Petitioner: WISCONSIN POWER & LIGHT CO., Intervenor-Petitioner, v. HON. RICHARD W. BARDWELL, Judge of the Circuit Court of Dane County, Branch 1, and others, Respondents.*

*No. 75–521. Argued January 20, 1976.—Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 78.)

* Motion for rehearing denied, without costs, on May 4, 1976.

For the intervenor-petitioner there was a brief by *Eugene O. Gehl* and *Griffin G. Dorschel* of Madison, and oral argument by *Mr. Gehl.*

For the respondent Public Service Commission there was a brief by *Bronson C. La Follette,* attorney general, and *Steven M. Schur,* chief counsel for Public Service Commission, and oral argument by *Mr. Schur.*

For all other respondents there was a joint brief by *Myron M. Cherry* of Chicago, Illinois, and *Stephen D. Brown* of Madison, and oral argument by *Mr. Cherry.*

CONNOR T. HANSEN, J. The issue presented for determination is:

If a utility issues securities pursuant to a certificate of authority granted by the PSC in accordance with ch. 184, Stats., do these securities continue to be valid and not subject to recall or being declared invalid, if, upon judicial review, it is determined that the commission erred in granting the certificate of authority?

As background, the following facts are relevant to this case. The procedure before the PSC in a ch. 184, Stats., case involves an initial application, an open hearing, findings by the PSC and, if approval is given to the application, an order by the PSC granting a certificate of authority to the applicant to proceed with the securities issue. The certificate is provisional, with the PSC reserving the right to review and approve terms and price of the bid which is ultimately accepted. Once the terms and price have been established, and approved by the PSC, a supplemental certificate of authority is issued, authorizing the utility to issue and sell the securities upon the authorized terms.

WEPCo filed an amended petition dated August 13, 1975, with the PSC for a certificate of authority under ch. 184, Stats., to issue the instant first mortgage bonds.

The petition, among other things, represented that to meet its construction program requirements and to provide for debt maturities and sinking funds its estimated requirements in the next five years would necessitate $560,000,000 of long-term financing. Of this amount, it estimated expenditures for 1975 and 1976 at $262,000,-000. The 1975–1976 estimates included $68,477,000 for maturing long-term debt, sinking funds and repayment of short-term loans. The balance of the estimated 1975–1976 expenditures, $193,523,000, included a $10,207,000 expenditure related to the proposed nuclear power plant, Koshkonong. WEPCo proposed to meet its 1975–1976 estimated needs with $162,000,000 internally generated funds and the sale of $100,000,000 long-term securities, including the $60,000,000 first mortgage bonds which are the subject of this case. Thus, the $10,207,000 Koshkonong expense is a part of a total estimated expenditure of $262,000,000 which will be financed in part by the sale of these $60,000,000 bonds. None of the identified individual expenditures comprising the total amount are assigned to or charged against any particular portion of the total funds to be generated.

On September 4 and September 12, 1975, hearings were held before the PSC on the application made by WEPCo. WED appeared in opposition to the application. This opposition was based on the fact that the total estimated expenditures included $10,207,000 related to the Koshkonong facility.

On October 16, 1975, the PSC issued an order granting the requested certificate of authority approving the bond issue. This order incorporated the following findings:

"The commission finds that such expenditures to be financed through issuance of the securities proposed herein are for proper corporate purposes and in an amount not greater than reasonably necessary for such corporate purposes. In making such a finding, it is the commission's understanding that a finding of proper corporate purpose under Chapter 184, Wisconsin Statutes, is in no

way related to a finding of public convenience and necessity under sec. 196.49, Wisconsin Statutes, or under sec. 196.491 (3), as created by Chapter 68, Laws of 1975. *Furthermore, the commission intends that proceeds obtained from the proposed issue of mortgage bonds used to finance plant construction will be used solely to finance construction for which any required regulatory approval has already been obtained or for which regulatory approval is not necessary under sec.* PSC *112.01, Wisconsin Administrative Code."* (Emphasis supplied.) [1]

On October 20, 1975, WED applied to the PSC for a rehearing. This application was denied by order of the PSC dated October 23, 1975. On November 4, 1975, CCOW applied for a rehearing on the matter. This application also was denied. WED and CCOW then filed a petition for review of the PSC order, pursuant to ch. 277, Stats., in the circuit court for Dane county.

The two organizations also filed the motion out of which the litigation arises. It was a motion for a temporary stay (sec. 227.17, Stats.) or a summary reversal of the PSC order. A hearing was held on this motion on November 17, 1975, and on November 18, 1975, the trial court denied the motions.

During the course of the hearing on the motion, the trial court made the following observations which contained the statements of record that resulted in this court ultimately granting leave to commence this original action:

"The court: Just a minute. I think that they are going to sell these bonds at their peril, and I want that perfectly clear on this record, that if the Court reaches the merits of this and finds out that the PSC did err, I expect them to recall those bonds at their own expense."

"The court: Let me put it this way. The only thing that I mentioned earlier, right at the outset, what bothers me is that I think the petitioners are entitled to

[1] A ch. 196, Stats., proceeding is presently pending before the PSC for authority to construct the Koshkonong facility. Therefore, no authority exists for such construction.

an arms length review of the legality of the PSC's action in authorizing this issuance, and under the set up the way it is and because of the way the money markets are, WEPCO has to act in reliance on the fact that PSC was right. I think they take the risks when they do that. I realize, and I pointed out, in my opinion, once you issue stocks and the bonds get in the hands of innocent purchasers for value, you have a serious problem in getting them back, but that bridge we will cross when we reach it. I think our United States Supreme Court has said if you make a mistake and act on what turns out to be an invalid order, it's void *ab initio* and you have to make everybody whole. That's a risk that the legal counsel that's advising WEPCO—that's—that's a case where they ought to have good and heavy malpractice insurance I'd say because if you tell them to go ahead and be wrong, you might be causing $100,000,000 worth of damages—not that much, but $5,000,000 perhaps."

These observations were incorporated into the court's ruling on the motion, as follows:

"Counsel for petitioners has, in the absence of the issuance of the stay order, urged the Court to require WEPCO to amend its Security Exchange Commission figures and prospectives [sic] to specifically state that the sale of the bonds in question is at the peril of the company in case this court should reverse the commission's order of October 16, 1975, on the merits.

"We feel that we covered that matter sufficiently in our statements on the record at the time of the oral argument. It is quite apparent that the issuance of the subject $60,000,000 bond issue is at the company's peril in case this court should, for whatever reason, find that the commission order authorizing such issuance was illegally and invalidly promulgated. In other words, we feel that we can handle that matter when the case reaches us on the merits."

WEPCO asserts that the recorded observations of the trial judge and incorporated in the order, though made in the context of denial of a stay, had the same effect as if the stay had been granted.

The opinions expressed by the trial judge at the hearing and in the ruling on the motion had an adverse effect on the bids for the bond issue. None of the attorneys for the various parties involved in the actual bond issue, including WEPCo and the prospective purchasers, were able to render unqualified opinions that the bonds, once issued, would not be subject to recall. In view of the statements of the trial judge, it was their opinion that if the certificate of authority given by the PSC for issuance of the bonds were to be held invalid on review, the bonds themselves might be invalid and subject to recall. Because unqualified legal opinions respecting the validity of the bonds upon issuance could not be obtained, a number of underwriting firms declined to enter bids on November 20, 1975, the date designated for bidding on the bond issue.

As a result of these events, WEPCo petitioned this court on December 2, 1975, for leave to commence an original action for declaratory judgment and for a writ of mandamus. The petition requests this court to declare that securities sold pursuant to a certificate of authority, if valid when issued, will continue to be valid, regardless of the ultimate determination on review on the validity of the certificate. It requests further that a writ of mandamus be issued commanding the trial judge to strike or amend the language, cited, *supra*, in his ruling to conform with the requested declaration.

Specifically, it is contended by the petitioner and the intervenor that the exigencies of the securities market make it imperative that the securities be considered valid when issued. It is argued that adequately financing a utility operation, thereby fulfilling statutory responsibility to serve the public, necessitates this determination regardless of a subsequent determination, upon judicial review, that the certificate of authority granted by the PSC authorizing the issue is invalid. Otherwise, accord-

ing to petitioner, prospective purchasers will not be interested in bidding on or buying the securities, since they could not be assured that the securities would not ultimately be declared invalid or void. This would make the bond issue unattractive to investors in comparison with competitive offerings by others involved in the utility bond market. This, of course, would place Wisconsin utilities in the unfavorable position of being unable to finance in a timely manner its ongoing operation, including plans for future development. Ultimately, such a situation adversely affects the consumer/ratepayers, or the public at large, in that the adequate service which the utility is required to provide could not be maintained.

WED and CCOW deny that a determination adverse to petitioner would affect the latter's financing structure to the extent predicted. However, it is obvious that securities issued subject to recall or to being declared void upon judicial review are, at the very least, placed in an unfavorable competitive position within the utilities bond market. The statutes regulating securities issued by public utilities do not lend themselves to a determination that the securities themselves are invalid if the certificate of authority authorizing the issue is found to have been improperly granted by the PSC.

Ch. 184, Stats., SECURITIES OF PUBLIC SERVICE CORPORATIONS, establishes the procedures for the issuance of securities by a public utility. Sec. 184.03 directs that:

"184.03 **Issue of securities.** (1) No securities shall be issued by any public service corporation until it shall first have obtained from the commission, and recorded upon its books a certificate authorizing such issue; and the commission shall not authorize the issuance of securities for any purposes which are not proper corporate purposes, or in an amount greater than is reasonably necessary for such corporate purposes, having in view the immediate requirements of the corporation and its prospective requirements over a reasonable period in the future, and other relevant considerations.

"(2) All securities issued in violation of any of the provisions of this chapter shall be void."

A basic rule of statutory construction was restated in *National Amusement Co. v. Dept. of Revenue* (1969), 41 Wis. 2d 261, 266, 163 N. W. 2d 625:

". . . [W]hen statutory language is clear and unambiguous,
" '. . . no judicial rule of construction is permitted, and the court must arrive at the intention of the legislature by giving the language its ordinary and accepted meaning.' *West Allis v. Rainey* (1967), 36 Wis. 2d 489, 495, 153 N. W. 2d 514; and *State v. Resler* (1952), 262 Wis. 285, 55 N. W. 2d 35."

The language of sec. 184.03, Stats., *supra,* is clear and unambiguous. The PSC *authorizes* the issuance of securities; the public service corporation itself *issues* the securities. Sec. 184.03 (2) specifically directs that all securities *issued* in violation of any of the provisions of ch. 184 shall be void. In other words, if the public service corporation issues securities without having complied with its responsibilities under ch. 184, the securities are void. This does not refer to the responsibilities of the PSC under ch. 184 in *authorizing* the issuance by granting a certificate of authority. Sec. 184.03 (2) does not say that securities *authorized* or issued in violation of the chapter provisions are void.

Therefore, we conclude that the securities are valid when issued if the public service corporation has fulfilled its obligations as mandated by the statute and the agency decision has not been stayed as provided in sec. 227.17, Stats. There is no claim that WEPCo did not comply with its obligations under ch. 184 and, thus, the bonds, had they been issued, would not have been void for the purposes of ch. 184. They would have been valid when issued, as would any other securities issued, if the issuing corporation similarly complied with its ch. 184 obli-

gations. The construction of power plants is a proper corporate purpose within the meaning of ch. 184.

That the securities should be determined valid when issued is supported by the language of sec. 184.06 (1), Stats., which states, in relevant part:

". . . (1) Upon the conclusion of its investigation, if the commission shall find that the proposed issue complies with the provisions of this chapter and that the financial condition, plan of operation and proposed undertakings of the corporation are such as to afford reasonable protection to purchasers of the securities to be issued, it shall issue to the corporation a certificate of authority . . . ."

We deem a major purpose of ch. 184 is the protection of the purchaser of the securities.

This is not to say that consumer/ratepayers or the public at large are not to be protected from the consequences of an erroneously granted certificate of authority. The very fact that a review by the PSC is required, and the nature of the findings which must be made, including that of "proper corporate purpose[s]," sec. 184.03, Stats., *supra,* indicate the intent that the public interest is to be protected. Moreover, sec. 184.06 (2), provides, in pertinent part, that:

"(2) The commission may attach to the issuance of any certificate under this chapter such terms, conditions or requirements as in its judgment are reasonably necessary to protect the public interest. . . ."

However, protection of the public interest and protection of the purchaser of the securities are not incompatible goals under the terms of this statute. The scope, language, and context of the statute indicate that, in order to protect the purchaser, the securities are valid when issued. The language of the statute, and related provisions, indicate that the public interest is to be protected by means other than subsequent invalidation of the securities.

CCOW and WED contend that no meaningful review of the certificate of authority exists if the securities, once issued, cannot be declared void or subject to recall. However, this misconceives the nature of the judicial remedies available upon review of the certificate of authority.

Ch. 184, Stats., specifies the scope of review:

"184.08 **Court review.** Any action of the commission under the provisions of this chapter shall be subject to review in the manner provided in chapter 227."

Sec. 227.17, directs that the institution of review proceedings shall not stay enforcement of the agency decision unless the circuit court grants a stay or injunction on such terms as it deems proper or as are statutorily provided for issuance of injunctions. (Sec. 196.43.) Thus, unless a stay is granted, the securities may be issued under the certificate of authority. Once issued, they are valid.

In the event the certificate of authority was erroneously granted, there is an appropriate judicial remedy. Upon review of the agency determination, the court may affirm the decision of the PSC, or may reverse or modify it. Sec. 227.20 (1), Stats. This means that the certificate of authority as a whole could be determined invalid or that portions of it could be modified. This does not mean, however, that the valid securities which have been issued under the grant of authority would be affected. Indeed, such an interpretation would be in conflict with the scope and purpose of ch. 184. Any judicial remedy directly affecting the validity of the bonds themselves would be contrary to a determination that the bonds are valid when issued. This is so because any determination that a judicial remedy upon review might affect the validity of the bonds would be the same as a determination that the bonds are not valid when issued. It would

have the practical effect of postponing a determination on the validity of the bonds, thus giving rise to all the same problems of marketability as are involved in the consideration of whether the bonds are valid when issued. This would be an unreasonable result, contrary to the rules of statutory construction. Statutory constructions which work unreasonable or absurd results are to be avoided. *Cross v. Hebl* (1970), 46 Wis. 2d 356, 174 N. W. 2d 737. *Ortman v. Jensen & Johnson, Inc.* (1975), 66 Wis. 2d 508, 520, 225 N. W. 2d 635. This statute which authorizes state regulation of the securities of public service corporations, is to be given a reasonable construction. *Wisconsin Southern Gas Co. v. Public Service Comm.* (1973), 57 Wis. 2d 643, 648, 205 N. W. 2d 403.

Thus, any appropriate judicial remedy in a certificate of authority review proceeding should be directed toward the use of the proceeds of the bonds, rather than the validity of the bonds themselves. The facts and circumstances of each case, the reason for which the certificate is being challenged, and the parties involved would dictate the appropriate remedy. If a judicial decision either reverses or modifies the agency decision, the PSC could determine the appropriate method for redirecting the proceeds of the bonds which have been issued.

We consider it appropriate to observe that WED and CCOW seem to confuse the "proper corporate purpose standard" in a ch. 184 proceeding relating to securities of utilities and the "public convenience and necessity" standard in a ch. 196 proceeding relating to the regulation of public utilities.[2] The underlying cause of the

[2] Counsel for WED and CCOW directs our attention to Clemons, *Public Regulation in Wisconsin Since Reorganization of the Commission in 1931* (1940) (Unpublished University of Wisconsin doctoral thesis); Carley, *Governor's Legislative Role: Lafollette v. Kohler* (1959) (Unpublished University of Wisconsin doctoral thesis). We find neither of these documents to be of material assistance in resolving the issue here presented.

issue joined herein is the proposed construction of the Koshkonong nuclear facility. As previously stated, the 1975–1976 expenditures of WEPCo were estimated to be $262,000,000. These expenditures are to be financed in part by the issuance of the instant $60,000,000 first mortgage bonds.

Included in these total expenditures was $10,000,000 dollars on Koshkonong. The application for the certificate of authority to issue the bonds states that commitments for Koshkonong essentially are those necessary to secure requisite approvals by regulatory agencies, maintain the existing agreement with the Atomic Energy Commission (now Energy Research & Development Administration) for enrichment services and assure the the procurement of a reliable supply of natural uranium. The PSC has not issued authority for the construction of Koshkonong. The order of the PSC granting the requested certificate of authority approving the instant bond issue states very plainly that, "proceeds obtained from the proposed issue of mortgage bonds used to finance plant construction will be used solely to finance construction for which any required regulatory approval has already been obtained or for which regulatory approval is not necessary under section PSC 112.01, Wisconsin Administrative Code." Also, in its order denying the motion for rehearing advanced by CCOW and dated November 10, 1975, the PSC stated:

"Funds raised in this specific securities issued [sic] proceeding are not intended to be used for the proposed Koshkonong Nuclear Generating Facility, nor for any construction which requires specific authorization under secs. 196.49, 196.491, Wisconsin Statutes (as created by Chapter 68, Laws of 1975) and PSC 112.01, Wisconsin Administrative Code. . . ."

Prior to the commencement of the instant ch. 184 proceeding by WEPCo in the PSC, WEPCo joined others

in an application to the PSC in a ch. 196 proceeding relating solely to Koshkonong. Those proceedings are still pending and we do not consider it necessary to review them extensively. However, in an order of the PSC entered in relation to those proceedings and dated October 18, 1974, we observe the PSC stated, ". . . [No] expenditure made or commitment entered into by the applicants [on Koshkonong] shall be deemed to be either approved or disapproved by the commission. . . ."

We, therefore, determine that securities issued pursuant to the provision of ch. 184, Stats., are valid when issued unless the agency decision is stayed as provided in sec. 227.17. A subsequent judicial review under sec. 227.20 (1), which modifies or reverses the agency decision to grant a certificate of authority to issue securities does not affect the validity of securities issued by the utility.

WEPCo has also petitioned this court for an alternative writ of mandamus directed to the trial judge. The petition is denied. The requested writ would direct the trial judge to withdraw or amend some observations of record, heretofore set forth, and incorporated, by reference, in his order denying the petitions of WED and CCOW for a stay of the agency decision and/or summary reversal. The challenged statements have no reference to the issue presently before the circuit court, *i.e.,* whether the determination of the PSC granting the certificate of authority should be affirmed, modified or reversed. Neither is the challenged language the basis for the ruling of the trial judge denying the motion to stay.

A writ of mandamus is a drastic remedy and generally will not lie when an adequate remedy exists. *State ex rel. Johnson v. County Court of Waukesha County* (1968), 41 Wis. 2d 188, 163 N. W. 2d 6. In the instant case our determination disposes of the issue of the statutory con-

struction relating to the validity of the bonds when issued. Such declaratory judgment has no effect upon the substantive result of the order of the trial judge denying the motion to stay the agency determination or denying summary reversal of such decision. Also, our declaratory judgment does not affect the merits of the proceeding now pending before the trial court.

In our opinion, the decision of this court to take original jurisdiction has provided the petitioners with an adequate remedy and our decision in the case resolves the issue as to the validity of the bonds. Hence, since we here determine that an adequate remedy is the result of the instant proceedings, there is no necessity to issue the writ of mandamus. Our decision now reduces the particular observations of the trial judge to a matter of no consequence.

At oral argument, counsel for Wisconsin Environmental Decade, Inc., and Concerned Citizens of Wisconsin, Inc., filed an extensive motion to clarify the record, and to strike certain matters in the petition for original jurisdiction, the intervenor's petition, and supporting briefs. We have considered the motion and it is hereby denied.

*By the Court.*—Rights declared; petition for alternative writ of mandamus denied.