WISCONSIN EMPLOYMENT RELATIONS BOARD, Appellant, vs. LUCAS, Respondent. [Two cases.]

*January 10—April 8, 1958.*

466

For the appellant there were briefs by the *Attorney General* and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

For the respondent there was a brief by *Graves, Chambers & Nash* of Wisconsin Rapids, and oral argument by *Lloyd L. Chambers.*

WINGERT, J. While the National Labor Relations Act has long empowered the National Labor Relations Board "to prevent any person from engaging in any unfair labor practice . . . affecting commerce," the National Board has never exercised the full measure of its jurisdiction over labor disputes primarily local in character. In 1950 the board published standards, largely in terms of yearly dollar amounts of interstate inflow and outflow, which would normally determine whether or not it would take jurisdiction of a particular employer. These standards were revised in 1954, when the dollar amount of yearly direct outflow into interstate commerce, below which the board would not normally take jurisdiction, was fixed at $50,000 for some types of enter-

prise and $100,000 for others. It was widely believed that the states, through their boards comparable to the Wisconsin Employment Relations Board, retained jurisdiction to deal with unfair labor practices by enterprises having less than the minimum amount of interstate commerce specified in the National Board's standards, and over which the National Board had not assumed jurisdiction, and presumably would not do so.

On March 25, 1957, the supreme court of the United States held that by vesting jurisdiction in the National Board over unfair labor practices "affecting commerce," the congress meant to reach to the full extent of its power under the commerce clause of the constitution, and to pre-empt the field and foreclose the states from jurisdiction over unfair labor practices affecting interstate commerce, even in enterprises where the amount of such commerce is less than sufficient to meet the standards fixed by the National Board, and regardless of whether the board has taken or will take jurisdiction of the particular case, save only where the National Board has ceded jurisdiction to a state agency pursuant to sec. 10 (a) of the National Act, 29 USCA, sec. 160. *Guss v. Utah L. R. Board,* 353 U. S. 1, 77 Sup. Ct. 598, 1 L. Ed. (2d) 601; *Amalgamated Meat Cutters v. Fairlawn Meats,* 353 U. S. 20, 77 Sup. Ct. 604, 1 L. Ed. (2d) 613; *San Diego Building Trades Council v. Garmon,* 353 U. S. 26, 77 Sup. Ct. 607, 1 L. Ed. (2d) 618. There has been no cession of jurisdiction to the Wisconsin Board.

The United States supreme court has also made it clear that the jurisdiction of the National Board extends to very small enterprises.

"Examining the act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of congress to make the operation of the act depend on any particular volume of commerce affected more than that to which courts would

apply the maxim *de minimis.*" *National L. R. Board v. Fainblatt,* 306 U. S. 601, 607, 59 Sup. Ct. 668, 83 L. Ed. 1014.

It follows that where it is appropriately shown to the Wisconsin Employment Relations Board that the enterprise in which a petition to that board alleges that an unfair labor practice has been committed and seeks relief therefrom, involves a substantial amount of interstate commerce—more than *de minimis*—the state board must decline jurisdiction.

In the instant case, neither the petitioner union representative nor the employer asserted at any time while the matter was before the board the existence of any interstate commerce whatever, nor was any such interstate commerce clearly apparent. All parties, petitioner, respondent, and the board, treated the matter as of purely intrastate significance, and the State Board's jurisdiction to entertain and dispose of it was unquestioned and tacitly admitted.

Nevertheless, and only incidentally, some evidence crept into the record suggesting that the operations of Lucas involved some interstate travel. Voit, one of the truck drivers alleged to have been wrongfully laid off, and who had been employed about eight and one-half months, in testifying about complaints by Lucas that he drove his truck too hard on long trips, said casually,—

"I haul machinery, cattle, and hay. When I mentioned the length of my trips, I mentioned Muscoda, Wisconsin. Other places are Fullerton, Nebraska, Ewing, Nebraska, North Dakota, South Dakota, and Illinois. I have taken trucks to all of those places during the course of my employment with Lucas."

Another of the truck drivers, Tio, testifying on the issue of the long hours he was required to work per week, identified a log he kept which showed the following notations with respect to one week in September, 1956:

"Mon. . . . Tues. . . . Trip to Ill. 34 hours.
Wed. . . . Thurs. . . . Trip to Ill. 27 hours.
Thurs. . . . Sun. . . . Trip to Neb. 60½ hours. . . .
Trips—Mon. (24) cattle to farmer—then to Milledgeville.
Tues. (25) Sterling—Forreston.
Wed. (26) Prophetstown—Kewaunee.
Thurs. (27) Bradford—Henry."

Tio also mentioned an occasion when "I was supposed to go to Milledgeville, Illinois," but refused to go. Referring to the same occasion, Lucas testified "I was waiting at a particular place in Illinois. I was going to help him [Tio] load so he could get a good early start to be back."

This was the evidence which the circuit court considered to have established that the Wisconsin Board lacked jurisdiction.

In this we think the court erred. The evidence in question does not so clearly establish the existence of an amount of interstate commerce sufficient to foreclose the State Board's jurisdiction, at the time the alleged unfair labor practices were committed, that only one conclusion, and that one fatal to jurisdiction, could be drawn by the trier of fact. The evidence does indeed indicate that Lucas' drivers sometimes traveled across state lines earlier in 1956, but it does not show that such trips were made in the regular course of business, or that Lucas was engaged in interstate commerce of any kind at the time when the unfair labor practices were alleged to have been committed or thereafter, or that the interstate transactions were more than *de minimis,* when viewed in the light of the totality of Lucas' operations. In that situation, the determination of the jurisdictional fact was for the board in the first instance, and not for the court, and the court should have remanded the case to the board for findings on the subject. *Bell v. Personnel Board,* 259

Wis. 602, 609, 49 N. W. (2d) 889. Cf., *Wisconsin E. R. Board v. J. P. Cullen & Son,* 253 Wis. 105, 108, 33 N. W. (2d) 182.

This is not a case for application of the presumption that an administrative agency has made all findings of fact necessary to support its jurisdiction, even though they are not specifically set forth. On the present record it seems too clear that the matter of interstate commerce was not considered at all, because there was nothing to suggest that such commerce existed in the volume required to meet the jurisdictional standards prescribed by the National Board, and the case was heard and disposed of by the Wisconsin Board prior to the above-mentioned decisions of the United States supreme court in the *Guss* and companion cases, and during a period when it was very generally assumed that the state agencies had jurisdiction in matters which, while involving interstate commerce, were without the standards announced by the National Board for the exercise of its own jurisdiction.

We also consider that the board should be granted leave to take additional evidence to enable it to make the jurisdictional finding. Secs. 111.07 (7) and 227.19 (1), Stats., both confer discretion upon the circuit court to order that additional evidence be taken by the board, when good reason for failure to present such evidence at the first hearing has been shown. We think that in the present case good reason was shown for the board's failure to go into the matter of interstate commerce, and that the subsequent decision of the United States supreme court in the *Guss Case* makes it desirable as a matter of proper regard for the federal policy as therein declared, that the board have a further opportunity to investigate, consider, and decide upon its jurisdiction. We leave it to the discretion of the circuit court whether the

parties, as distinguished from the board, should be granted leave to adduce additional evidence as a matter of right.

In opposition to this line of reasoning, it is urged by the board that the jurisdictional objection on the part of the employer, Lucas, came too late. Reference is made to the provision of sec. 111.07 (7), Stats., that "No objection that has not been urged before the board shall be considered by the court unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." We consider that the objection under discussion goes to the board's jurisdiction of the subject matter, and that accordingly it can be raised at any time, and by the court on its own motion. *Union Indemnity Co. v. Smith,* 187 Wis. 528, 538, 205 N. W. 492. In a situation like this, jurisdiction of the subject matter is not conferred by consent of the parties or by estoppel. *State ex rel. Gaudynski v. Pruss,* 233 Wis. 600, 606, 290 N. W. 289.

*By the Court.*—Judgment reversed, with directions to remand the case to the Wisconsin Employment Relations Board for further proceedings consistent with this opinion.

FAIRCHILD, J. (*concurring in part; dissenting in part*). I agree that the judgment should be reversed but am of the opinion that the direction to the circuit court should be to enter judgment affirming and enforcing the order of the board. The board has jurisdiction over "any controversy concerning unfair labor practices." When the record discloses that this is the controversy involved, the record supports the board's jurisdiction, unless it has also been proved that the particular unfair labor practices challenged affect interstate commerce. I agree with the majority that the record before the board does not so clearly establish that the alleged unfair labor practices affected interstate commerce that the present record does not support the board's jurisdic-

tion to issue the order. I conclude, however, with all due respect, that it was too late for the respondent to assert the existence of a fact which would defeat the board's *prima facie* jurisdiction.