WISCONSIN'S ENVIRONMENTAL DECADE, INC., and others, Petitioners-Appellants, v. PUBLIC SERVICE COMMISSION, Respondent: MADISON GAS & ELECTRIC COMPANY, Intervenor-Respondent.†

*No. 76–768.  Argued March 6, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 609.)

† Motion for rehearing denied, without costs, on September 21, 1978.

For the appellants there were briefs and oral argument by *Kathleen M. Falk* of Madison.

For respondent Public Service Commission, the cause was argued by *Steven Levine,* assistant chief counsel, with whom on the brief were *Steven M. Schur,* chief counsel, and *Bronson C. La Follette,* attorney general.

For respondent Madison Gas and Electric Company, there was a brief by *John A. Hansen, Richard K. Nordeng, Susan Steingass,* and *Stafford, Rosenbaum, Rieser & Hansen,* and oral argument by *John A. Hansen,* all of Madison.

CONNOR T. HANSEN, J.   On November 9, 1976, the Public Service Commission of Wisconsin (hereinafter PSC) entered an order granting rate increases to Madison Gas & Electric Company (hereinafter MG&E) for electric and natural gas service and authorizing modifications in electric rate design.

The order followed a series of hearings during which testimony and exhibits were presented by witnesses on behalf of MG&E, the PSC, and intervenors, Wisconsin's Environmental Decade, Inc. (hereinafter WED), the appellant on this appeal; Friends of the Earth (FOE); the city of Madison; and People United for Responsible Energy (PURE). In addition, several persons testified in an individual capacity, generally in opposition to the rate increase. Appearances were entered by some forty-three persons, apparently by entering their names on sign-up sheets.

In addition, MG&E had previously, on June 16, 1975, been granted an interim rate increase pending a final determination of its application. More than one hundred persons had entered appearances in the proceedings for the interim increase, which were conducted under the same PSC docket number as were the subsequent proceedings which culminated in the order of November 9, 1976.

On November 9, 1976, the day the order was entered, WED and Peter Anderson (collectively referred to as WED), petitioned the circuit court for Dane county for review of the order, pursuant to sec. 227.16, Stats., on the ground that it did not comply with the Wisconsin Environmental Protection Act, sec. 1.11.

For the purposes of this opinion, we assume copies of the appellants' petition for review were served on the PSC, MG&E, FOE, the city of Madison and PURE within thirty days after the petition was filed.[1]

The PSC filed a notice of appearance in the circuit court, and MG&E filed a notice of appearance and a second petition for review of the PSC order, on different grounds. Following a hearing on the appellants' motion for a temporary injunction,[2] the PSC on December 20, 1976, moved for dismissal of the petition for review on the ground that it had been served upon the PSC before the order of the PSC had itself been served upon the appellants, in alleged contravention of sec. 227.16 (1) (a), Stats.

On January 14, 1977, the PSC again moved for dismissal, on the previously-stated ground and on the further ground that the appellants had not served their petition for review on all persons who had appeared in the proceedings, as allegedly required by sec. 227.16 (1) (c), Stats.

The motion to dismiss was granted, judgment was entered accordingly, and WED appeals. The following issues are presented:

---

[1] WED states in its brief that such service was made, and the respondents, the PSC and MG&E, do not contest this statement. However, the record contains only an admission of service upon the PSC.

[2] The record does not indicate whether the temporary injunction was granted.

1. Must the notice requirements of sec. 227.16(1) (c), Stats., be complied with to invoke the subject matter jurisdiction of a reviewing court?

2. Has the PSC waived, or is it estopped from raising, any jurisdictional defect?

3. Did the trial court err in dismissing the petition?

4. Was service of the petition for review fatally premature?

5. Must a petition for review of an agency decision, under sec. 227.16, Stats., be served upon all persons entering an appearance in the agency's proceedings?

### SUBJECT MATTER JURISDICTION.

Section 227.16(1), Stats., provides in relevant part:

*"227.16 Parties and proceedings for review.* (1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.15 shall be entitled to judicial review thereof as provided in this chapter.

"(a) Proceedings for review shall be instituted by serving a petition therefor personally or by registered mail upon the agency or one of its officials, and by filing such petition in the office of the clerk of the circuit court for the county where the trial shall be held pursuant to ch. 261 [ss. 801.50 to 801.62] except s. 261.01 (9) [s. 801.50(9)] (unless a different place of review is expressly provided by law), all within 30 days after the service of the decision of the agency upon all parties as provided in s. 227.11 or, in cases where a rehearing is requested, within 30 days after service of the order finally disposing of the application for such rehearing, or within 30 days after the final disposition by operation of law of any such application for rehearing.

" . . .

"(c) Copies of the petition shall be served, personally or by certified mail, or, when service is timely admitted in writing, by first class mail, not later than 30 days after the institution of the proceeding, upon all parties

who appeared before the agency in the proceeding in which the order sought to be reviewed was made. For the purpose of such service the agency upon request shall certify to the petitioner the names and addresses of all such parties as disclosed by its records, which certification shall be conclusive."[3]

Sec. 227.16(1)(c), Stats., requires that copies of a petition for judicial review be served, not more than thirty days after institution of the proceeding, upon all parties who appeared before the agency in the proceeding in which the order was made.

WED argues that strict compliance with this language is not essential for the circuit court to take subject matter jurisdiction of the case, and that a failure to serve a non-agency party merely deprives the trial court of personal jurisdiction over that party.

WED contends that there are only two prerequisites to subject matter jurisdiction: (1) Timely service upon the agency making the order which is contested, and (2) timely filing of the petition with the circuit court, both under sec. 227.16(1)(a), Stats.

---

[3] As amended by Laws of 1977, ch. 187, sec. 68m, effective August 1, 1978, sec. 227.16(1)(a), Stats., will provide:

"227.16(1)(a) Proceedings for review shall be instituted by serving a petition therefor personally or by registered mail upon the agency or one of its officials, and by filing the petition in the office of the clerk of the circuit court for the county where the trial is to be held within 30 days after the service of the decision of the agency upon all parties as provided in s. 227.11 or, in cases where a rehearing is requested, within 30 days after service of the order finally disposing of the application for such rehearing, or within 30 days after the final disposition by operation of law of any such application for rehearing. The proceedings shall be in the circuit court of the county where the petitioner resides, except that if the petitioner is an agency, the proceedings shall be in the circuit court of the county where the respondent resides. The proceedings shall be in the circuit court of Dane county if the petitioner is a nonresident. If all parties stipulate and the court to which the parties desire to transfer the proceedings agrees, the proceeding may be in any circuit court."

This contention was conclusively rejected by this court in *Cudahy v. Department of Revenue*, 66 Wis.2d 253, 224 N.W.2d 570 (1974). That case involved a taxpayer's petition for review of a decision of the Wisconsin tax appeals commission affirming tax assessments imposed by the department of revenue. The tax appeals commission, as the agency making the decision, was timely served with a copy of the petition for review. The department of revenue, which is entirely separate and distinct from the commission, was in the position of a party appearing before the commission, and had not been served with a copy of the petition for review within thirty days after institution of the proceedings. This court held that failure to comply with the service requirements of sec. 227.16(1)(c), Stats., left the circuit court without jurisdiction.

We quoted *Monahan v. Department of Taxation*, 22 Wis.2d 164, 167, 125 N.W.2d 331 (1963), another case in which the department of revenue, as a party appearing before the board of tax appeals, had not been served:

"'The department had appeared in the proceeding before the board in which the board has entered its decision and order of May 3, 1962, and with respect to which the taxpayer sought circuit court review. Therefore, unless the department was served with a copy of the petition for review within the required thirty-day period, the circuit court would be without jurisdiction to conduct the review proceeding.'"

Applying this principle in *Cudahy, supra*, at 258, this court held that "the department must be served as a party who appeared before the agency," and that:

". . . In the instant case there was no attempt to serve the department until well after the thirty day statutory period had expired.

". . . Under *Monahan*, the first petition was properly dismissed because of failure of the appellants to timely serve a copy of the petition upon the department after commencement of the proceedings. . . .

"We now hold that unless there is compliance with the mandatory requirements of sec. 227.16(1), Stats., the taxpayer cannot effectively invoke the subject matter jurisdiction of the circuit court." *Cudahy v. Department of Revenue, supra,* at 261, 262.

Despite the plain holding of *Cudahy,* WED asserts that service upon the parties under sec. 227.16(1)(c), Stats., is not a condition precedent to the invocation of the circuit court's subject matter jurisdiction because such service is to be made ". . . after the institution of the proceeding, . . ." and because proceedings for review are "instituted," under sec. 227.16(1)(a), when the petition is served upon the agency and filed with the circuit court.

This sequence of procedure does not make compliance with the statutory service requirements any less essential to the court's jurisdiction, however. Ralph M. Hoyt, one of the principal authors of ch. 227, Stats. (*see Hamilton v. ILHR Department,* 56 Wis.2d 673, 687, 203 N.W.2d 7 (1973)), explained the rationale of the drafters:

". . . The appeal is taken by serving on the administrative agency and filing with the clerk of the circuit court, within thirty days after service of the agency's decision, a notice stating the nature of appelant's [sic] interest and the grounds of his appeal. The appellant must be a person aggrieved by the decision and directly affected thereby. Service of the notice may be either personal or by registered mail. Not less than thirty days after the institution of the appeal, copies of the notice must likewise be served on all parties who appeared in the administrative proceeding. This order of procedure was adopted in order to prevent an appeal from being lost through failure to serve all adverse parties before the close of the thirty-day period initially allowed, as there might well be instances in which the appeal would be decided upon at the very close of the period and in some of the more complicated cases it might not be possible to ascertain quickly the identity

and location of all the persons who appeared in the proceeding . . ." Hoyt, *Wisconsin Administrative Procedure Act,* 1944 Wis. L. Rev. 214, 231.

Thus the drafters considered that failure to serve the parties within the allotted time would result in an appeal being "lost," and therefore allowed a full thirty-day period after institution of the proceeding for such service.

The reliance of WED upon *Hamilton v. ILHR Department, supra,* for the proposition that the circuit court's subject matter jurisdiction may be invoked without serving the parties appearing in the agency proceeding is not well founded and does not fully recognize the holding of this court in *Cudahy, supra. Hamilton* involved an order of the Department of Industry, Labor & Human Relations dismissing a complaint of racial discrimination filed against the American Motors Corporation (A.M.C.). A.M.C. argued that the complainant's petition for judicial review of the order was insufficient. In determining that failure to serve A.M.C. by registered mail was not fatal to the circuit court's jurisdiction in *Hamilton,* this court emphasized that unlike the present case, where alleged parties were given no notice whatever, in *Hamilton,*

". . . there [was] no doubt that A.M.C. was in fact served within the time limit, the only fault [was] that registered mail was not used. A.M.C. was notified within the statutory time; it has not been misled nor its right to participate prejudiced in any way. . . ." *Hamilton, supra,* at 687.

Indeed, throughout the decision in *Hamilton,* this court emphasized the unique nature of the facts involved there. As a result of errors by the Department of Industry, Labor & Human Relations, the department's order had been issued defectively three times and had been reissued a fourth time. The complainant, Hamilton,

had sought review each time, without success. Hamilton sought review of the fourth order by timely transmitting to the clerk of circuit court a petition for review with $8 for filing fees, the amount he had been charged in a previous effort to obtain review. The petition for review remained unfiled in the office of the clerk of court until after the filing period had elapsed, and was then returned to Hamilton with the advice that a filing fee of $11 was required.

"Under the facts of this case," the court said, " 'in legal contemplation,' we hold the petition was filed with the clerk of court within the thirty-day statutory period to seek a review of the department order." *Hamilton, supra,* at 685. The court repeatedly stated that its decision was made "under the procedural facts of this case," "under such circumstances," and "under the facts of this case," and that:

"This is not the case where there was only one petition for review sought from one administrative order. Nor is it the case where the claimant did not seek compliance with sec. 227.16(1), Stats., before the review period had expired. Nor a case where no fee accompanied the petition. Nor is it the case where the petitioner could have complied but did not solely because of his own inadvertence, mistake or negligence. Rather, this is a case where, except for the department's faulty procedures and the clerk's unreasonable failure to file, there would have been compliance. . . ." *Hamilton, supra,* at 688.

Moreover, the evident intent of the court to limit the holding of *Hamilton* to its particular facts was borne out by this court's decision in the *Cudahy Case, supra.* The appellant in *Cudahy* argued, as does WED in the present case, that *Hamilton, supra,* had determined that failure to serve parties appearing in the agency proceedings could not affect the court's subject matter jurisdiction.

This court rejected this argument and described *Hamilton* as "unusual and readily distinguishable," *Cudahy, supra,* at 261. The court emphasized that, while *Hamilton* was "'. . . a case where, except for the department's faulty procedures and the clerk's unreasonable failure to file, there would have been compliance,'" in *Cudahy* there had been no attempt to serve a party (*i.e.* the department of revenue) appearing before the tax appeals commission, until well after the thirty-day period had expired. *Cudahy, supra,* at 261, *quoting Hamilton, supra,* at 688.

The interpretation of *Hamilton* now urged by WED was proposed and rejected in *Cudahy, supra.* Strict compliance with the service requirements of sec. 227.16 (1) (c), Stats., is essential to the subject matter jurisdiction of the circuit court.

## WAIVER AND ESTOPPEL.

WED next argues that the PSC has waived any objections to the jurisdiction of the circuit court and also that the PSC is estopped from raising any such objection. These arguments are founded on the view that failure to serve nonagency parties is a defect of personal jurisdiction rather than subject matter jurisdiction. Under the dispositive holding of the *Cudahy Case, supra,* however, it is clear that such a failure prevents the circuit court from acquiring subject matter jurisdiction.

It is fundamental that parties cannot confer subject matter jurisdiction on a court by their waiver or consent. Sec. 801.04, Stats.; *Gelatt v. DeDakis,* 77 Wis.2d 578, 584, 254 N.W.2d 171 (1977) ; *Joint School v. Wisconsin Rapids Ed. Asso.,* 70 Wis.2d 292, 234 N.W.2d 289 (1975) ; *Vishnevsky v. U.S.* (E.D. Wis. 1976), 418 Fed. Supp. 698. Nor can subject matter jurisdiction be con-

ferred by estoppel. *Wisconsin E. R. Bd. v. Lucas,* 3 Wis. 2d 464, 89 N.W.2d 300 (1958) ; *State ex rel. Gaudynski v. Pruss,* 233 Wis. 600, 290 N.W. 289 (1940) ; 20 Am. Jur.2d, *Courts,* p. 455, sec. 95.

Thus, in *Cudahy, supra,* at 259, 260, this court cited *Evans v. Department of Local Affairs & Development,* 62 Wis.2d 622, 626, 215 N.W.2d 408 (1974), for the general proposition that " '. . . jurisdiction for judicial review of the findings and orders of administrative agencies is dependent upon strict compliance with sec. 227.16, Stats., and that the parties could not confer jurisdiction upon the court by waiver or consent. . . .' " The court said that this statement referred to subject matter jurisdiction rather than personal jurisdiction, "because personal jurisdiction can be conferred by waiver or consent whereas subject matter jurisdiction cannot." *Cudahy, supra,* at 260.

Accordingly, argument that the PSC has waived, or is estopped from asserting, any defect of jurisdiction resulting from the allegedly inadequate service in this case, is without merit.

## DISMISSAL OF PETITION.

WED further argues that instead of dismissing the petition for review the court should have extended the time for service.

This argument was advanced and conclusively rejected in *Cudahy, supra.* There this court held that failure to comply with the service requirements of sec. 227.16, Stats., within the time allowed results in the circuit court not having jurisdiction to act in the case, and the court therefore lacks authority to extend the time for service. This holding is dispositive here.

Alternatively WED argues that the circuit court should have permitted WED to amend its "statement of position," submitted in response to a petition for review which was filed by MG&E to obtain review of certain aspects of the same November 9, 1976, order contested by WED. WED would amend its statement of position so as to incorporate the arguments raised by its own petition for review dismissed by the circuit court.

This argument is misplaced. This is not an argument against dismissal of WED's petition in this action, but rather an argument in favor of amendment of its statement of position in the related, but distinct, judicial review initiated by MG&E. The record does not show that any effort was made to effect such an amendment. Dismissal of the petition in this action did not preclude WED from seeking an amendment which would effectively import into the proceedings initiated by MG&E the arguments raised in WED's petition for review. Such efforts would be part of those separate proceedings, however, and would not be part of the instant appeal.

■

If the petition was not served on the proper parties, therefore, dismissal was required.

## *WAS THE PETITION FOR REVIEW FATALLY DEFECTIVE?*

The circuit court's dismissal of the petition for review was also based on a second ground. The petition for review of the PSC order was served on the PSC *before* the PSC's order had been served on WED. Sec. 227.16 (1) (a), Stats., provides that a petition for review shall be served ". . . within 30 days after the service of the decision of the agency upon all parties. . . ." The circuit court considered the instant petition to have been fatally premature.

For the purposes of this review, we consider there was substantial compliance with the requirements of sec. 227.16, Stats. WED states that it was represented at the November 9, 1976, meeting at which the order was approved; that it was intimately familiar with the draft orders which preceded the order, and with the contents of the final order; and that it had obtained an advance, unsigned copy of the order. In view of these statements, the fact that the petition was served before the order was actually mailed to WED does not appear contravene the requirements of sec. 227.16, to the extent that the trial court lacked jurisdiction.

A statute must be construed in light of its purpose. The primary purpose of the service requirements of sec. 227.16, Stats., is to provide notice. *Hamilton v. ILHR Dept., supra,* at 686, 687. That function had here been fulfilled. The purpose of the requirement that the petition be served within 30 days "after the service of the decision" is twofold: First, it makes clear that a petitioner is afforded a full thirty days in which to seek review, and that any delay between the making of a decision and the time of service thereof is not counted in the calculation of this period; second, the provision fixes a strict cutoff date for the filing of a petition for review. Neither of these purposes is implicated here.

The PSC argues that there are sound policy reasons why a petition for review ought not precede service of the order sought to be reviewed, and we agree with this as a general proposition. Where the terms of the order are not known to the petitioner, a premature petition could prove to be needless or inappropriate when the order was subsequently received. A petition for review ought not to be based on speculation about the contents of an order.

However, there was no such speculation here. It appears that WED was fully apprised of the contents of

the order. The cases cited by the PSC, in which it was held that an appeal could not be filed after rendition of an oral decision from the bench, but before entry of judgment (*see, e.g., State ex rel. Hildebrand v. Kegu,* 59 Wis.2d 215, 207 N.W.2d 658 (1973)) are not apposite. In such a case, the advisability or grounds of appeal may turn on the precise language of the judgment. In contrast, an order of the PSC, once approved, may not be altered without a new hearing. *See: Mid-Plains Telephone v. Public Serv. Comm.,* 56 Wis.2d 780, 202 N.W.2d 907 (1973) ; *see:* sec. 196.20, Stats.

Further, the construction urged by the PSC could have a pernicious effect where an order threatens immediate harm to a petitioner. The PSC's orders may be made effective at the time they are ordered. Sec. 196.40, Stats. Under the PSC's view of sec. 227.16, however, a party would be unable to seek judicial review of the order, although it was in full effect, until a copy of the order was served on the party. In the instant case, copies of the order were not mailed to various parties, including WED, until several days after the order was entered. Where, as here, the petitioner seeks a temporary injunction, such a gap could well be prejudicial.

Therefore, on the facts presented, and in view of WED's familiarity with the terms of the order, the petition was not fatally premature.

## WHO MUST BE SERVED?

At the various hearings in these proceedings, those in attendance were requested to sign either a slip of paper or a pad if they wished their appearance noted. During the November 6, 1976, hearing, 43 persons entered their names on the sign-up sheets. Following a hearing, and on June 16, 1975, MG&E was granted an interim rate increase. During the interim rate proceeding, it appears

that in excess of 100 persons entered their names on the sign-up sheets. Nearly all persons who entered their names on the sign-up sheets also entered their addresses.

Both the interim-rate-increase hearing and the November 6th hearing were conducted under the same PSC docket number. The record in these proceedings encompasses several volumes and the hearings were conducted over several days. There is no way to tell whether the persons who entered their names on the sign-up lists were in attendance for part of the day or for the entire proceeding.

The difficulty with the case is that at the conclusion of the proceedings, and without waiting for PSC to formally enter and serve the final order as it is required to do by statute, WED undertook to initiate a Chapter 227 review. In doing so, WED took it upon itself to determine the proper parties for service of its petition for review. Thus WED decided to serve its petition on PSC, MG&E, FOE, the city of Madison, and PURE. WED now seeks independent judicial determination that it has served all the proper parties in the PSC proceedings.

As the trial court correctly observed, a court is not obligated to search the records of the PSC and ascertain the degree of participation of each of the many persons appearing at the hearings and by some formula decide whether or not they are proper parties to a Chapter 227 review proceeding.

The initial responsibility for determining who has been admitted as a party or determined to be a party rests with the PSC. If there is any doubt as to whom the PSC has thus determined to be a party, it is the obligation of the petitioner seeking review to request certification under sec. 227.16(1)(c), Stats. Instead, in the instant case, the petitioner undertook to make its own independent determination as to the necessary and proper parties.

Counsel for the respondent also directs our attention to considerable information submitted to this court by the appellants in support of their position, which information is *de hors* the record. The submission of this material commences with the submission of appellants' brief in chief and continues with correspondence directed to the court's attention even after oral argument. Not only does such a practice place an unnecessary burden on opposing counsel and the court, but more importantly it is contrary to the rules of appellate practice. Suffice it to say that in arriving at our decision, we have not considered material submitted which is outside the record and the attempt to so supplement the record is not looked upon with favor.

The trial court entered judgment dismissing the petition for review. While the position in which the appellants find themselves is, to significant degree, of their own making, we conclude such a result in this case is unnecessarily harsh and, in the exercise of our discretion, we conclude the interest of justice dictates a remand of the cause.

On remand, it will be incumbent on the PSC to make a determination as to the parties in the agency proceeding upon whom the appellants must serve copies of the petition for review as required by sec. 227.16(1)(c), Stats. Admittedly, neither the statutes nor the Administrative Rules of Procedure offer precise guidelines for the making of such a determination.

However, certain conclusions seem obvious. Not everyone who signs a slip or pad entering his appearance at one or more of the sessions of a rate case, in this case nearly 150 persons, is, *ipso facto,* to be considered a party for purposes of review proceedings. Neither is it incumbent on a trial court to examine the record of the proceedings before the PSC to determine the extent and

nature of the participation of all persons signing appearance slips and thus make an ex post facto judicial determination as to the proper parties to be served in a review proceeding. Also, it is neither proper nor in the interest of an orderly proceeding in a rate case to have the various parties to the agency proceeding, whatever their status for review purposes, make such an examination of the PSC records and thus arrive at their own independent determinations as to the proper parties.

Section 227.01(6), Stats.,[4] provides that:

*"(6)* 'Party' means each person or agency named or admitted as a party. Any person whose substantial interests may be adversely affected by any proposed agency action in a contested case shall be admitted as a party."

This leaves unresolved how one is "admitted as a party" by the administrative agency.

The rules of the PSC do not resolve this question either. The "parties" to PSC proceedings are defined by 9 Wis. Admin. Code PSC 2.02 as including complainants, defendants, intervenors, respondents, applicants, objectors and petitioners. In an application for a rate increase "[p]arties . . . other than the applicants and objectors are interveners," 9 Wis. Admin. Code 2.02(3). These provisions do not say how one becomes a party.

The PSC argues that one becomes a party merely by entering an appearance. This proposition is implied, the PSC argues, by 9 Wis. Admin. Code PSC 2.02(4), which provides that:

"Interveners 'As Their Interest May Appear' who fail to resolve their appearances further will be considered to be not 'In Opposition' to the cause which initiated the proceeding."

---

[4] This section became effective September 24, 1976. Prior to that date, ch. 227, Stats., did not define the term "party."

The PSC maintains that this language shows that all persons who appear and who "fail to resolve their appearances further" are intervenors and thus parties. WED responds that this language merely shows that a person cannot intervene without appearing, and that this is not equivalent to saying that every person who appears is an intervenor.

"Appearances," for purposes of PSC proceedings, are defined by 9 Wis. Admin. Code PSC 2.32:

*"PSC 2.32 Appearances.* (1) A person desiring to participate in a proceeding, whether on his own behalf or as an authorized agent or attorney, shall enter his appearance in person by giving his name and address and the name and address of any party he represents and in what capacity he is employed by such party.

" (2) Members of the commission staff appear neither in support of nor in opposition to any cause, but solely to discover and present, if necessary, facts pertinent to the issues."

WED asserts that it is common practice for the persons attending a hearing to sign form slips or pads of paper circulated informally, and that this is how appearances are determined.

The provision that "[m]embers of the commission staff [who] appear" do so not in support of opposition, but merely to elicit and present pertinent facts, also tends to suggest that not all persons who appear are parties. In the instant case, twelve of the forty-three persons identified in the PSC's list of appearances were PSC staff members.

The PSC's rules are therefore inconclusive. Nor can guidance be found in federal administrative practice. It appears that both of the competing approaches advocated by the instant parties have been adopted by federal agencies. For example, the rules of the Interstate Commerce Commission permit an appearance to be entered

without filing a petition for intervention, and provide that anyone entering an appearance becomes a party to the proceedings. In contrast, the rules of the Securities and Exchange Commission do not permit admission as a party unless it is first shown that admission would be in the public interest and either that an opportunity for more limited participation under a discretionary "leave to be heard" would be inadequate, or that the petitioner in certain cases may be "aggrieved." *See* 1 Davis, *Administrative Law Treatise,* pp. 559–572, sec. 8.11.

In *Daly v. Natural Resources Board,* 60 Wis.2d 208, 208 N.W.2d 839 (1973), cert. den. 414 U.S. 1137, this court held that members of the Menominee Tribe of American Indians who had appeared at a hearing to oppose construction of a dam in Menominee county were entitled to party status by virtue of their status as citizens of the state and enrolled members of the tribe entitled to use and enjoy navigable streams. ". . . When the appellants appeared and contested the rights or privileges of [the applicant] to construct the dam they became parties within the meaning of [sec. 227.01(2), Stats.] and the proceeding became a contested case," this court said. *Daly v. Natural Resources Board, supra,* at 217, 218.

This decision supports a broad understanding of the term party. However, *Daly* does not necessarily stand for the proposition that everyone appearing in an administrative proceeding thereby becomes a party. The appellants in *Daly* were six tribal members, and the extent of their participation is not clear from this court's decision. However, the decision does show that they were represented by counsel and were permitted to be heard by themselves and counsel and to conduct reasonable cross-examination. On these facts, it cannot be said that *Daly* stands for the proposition that every member of the

audience providing his name and address thereby becomes a party.

The position of the PSC is also consistent with the language of *Morris v. Howard Research & Development Corp.*, 278 Md. 417, 365 Atl.2d 34 (1976). There, a taxpayer had appeared at a zoning agency hearing, testified as a witness and made statements in opposition to certain zoning changes. This participation established his status as a party to the proceeding, the court held, saying:

". . . Bearing in mind that the format for proceedings before administrative agencies is intentionally designed to be informal so as to encourage citizen participation, we think that absent a reasonable agency or other regulation providing for a more formal method of becoming a party, anyone clearly identifying himself to the agency for the record as having an interest in the outcome of the matter being considered by that agency, thereby becomes a party to the proceedings." *Morris v. Howard Research & Development Corp., supra,* at 37.

However, we note that the taxpayer involved in *Morris v. Howard Research & Development Corp., supra,* had appeared as the only opponent to the administrative action.

We also believe that in determining who is a party for the purpose of service of process in a review proceeding, the definition of party in sec. 227.01(6), Stats., above, is intended "to indicate a very broad basis for standing in administrative proceedings." Judicial Council Note to Laws of 1975, ch. 414, sec. 5. Section 227.01 (2), defining a contested case, reflects the intention "that a low threshold of qualification for participation in a contested case be established. . . ." Judicial Council Note to Laws of 1975, ch. 414, sec. 5.

While the foregoing considerations tend to support the position of PSC, nevertheless we conclude there are countervailing concerns which tend to militate against the position of PSC in its determination of proper par-

ties for service of process in the commencement of a Chapter 227 review proceeding.[5]

First, the use of appearance slips to determine the identity of the parties is not a precise or objective method of determining parties to an administrative rate proceeding. As previously noted, the PSC's list of appearances in this case included the names of 12 PSC staff members. However, PSC does not assert that these staff members are parties entitled to be served with petitions for review. Although the PSC asserts that entering an appearance is not an offhand or casual act, the list of appearances in this case shows that no addresses were given for several of the persons appearing. The record does not reveal the manner in which the appearances were obtained, whether sign-up sheets were circulated among audiences, or whether those entering an appearance were intentionally or knowingly manifesting a desire to become parties.

Further, although the PSC asserts that it has consistently considered all persons making appearances to be parties, this assertion is undercut by the certification procedures employed by the PSC itself under sec. 227.16 (1) (c), Stats., *supra*. That provision requires an agency on request to certify to a petitioner the names and addresses of the parties and makes such a certification conclusive. The brief of the PSC states that it is not the practice of the PSC to certify to a petitioner the names of all persons who have appeared. Rather, the reported practice is to send a form letter to those who have appeared, asking whether they desire to be certified, and to certify to the petitioner only those parties who express a desire to be treated as parties.

This practice recognizes a distinction, reflecting a difference in their degree of interest, between those who

---

[5] We would emphasize that our observations on this issue in no way relate to a consideration of who has standing to institute such a review proceeding.

are parties and those who merely appear. This distinction has been more explicitly recognized by other authorities. In *Save The Bay, Inc. v. Department of Public Utilities,* 366 Mass. 667, 322 N.E.2d 742, 749 (1975), the Massachusetts Supreme Court recognized this distinction in discussing the status of an environmental group known as Save The Bay, Inc., in an administrative proceeding. "From [the] record," the court said:

". . . it does not appear that Save the Bay was in any formal sense a party before the Department or that it sought but was improperly denied leave to intervene. Save the Bay's appearance before the Department was limited to unsworn statements from two of its officers and to informal questioning of witnesses by these persons at the end of the sessions. . . ."

In the present case, it appears that the persons who were not served had a less active part in the proceedings than did Save the Bay in the Massachusetts proceedings, and that they were not actual participants in the proceeding.

This distinction is most squarely stated in Welch, *Cases and Text on Public Utility Regulation* (rev. ed. 1968), at 646, 647. After identifying the various categories of "parties in interest" in utility regulatory proceedings and briefly identifying the nature of each of these categories, Welch states that:

"In addition to the formal parties to the rate case, including intervenors, the commission or its examiner may also permit any person or representative of corporations or associations to be heard. But they will not be parties to the proceeding unless so designated."

This approach, under which those who appear are not considered parties unless formally so designated, is supported by policy considerations. The implications of according full party status to each of the hundreds, or even thousands, of persons who enter an appearance in a controversial rate case, nuclear power plant construc-

tion case, or other PSC proceeding are suggested by Welch, *supra,* at 647:

"The status as a 'party' in a regulatory case entitles one to notice and copies of all documentary pleadings, as well as the opportunity to be present or represented at hearings and conferences, to offer testimony and cross-examine other witnesses, and generally to submit, question, and challenge evidence within the rules of procedure laid down by the commission. The commission itself may at all times call upon its own . . . staff to submit testimony bearing upon any point at issue in the case. . . . But where such commission evidence and testimony is put into the record, other parties have the right, of course, to cross-examine staff testimony."

The rules of the PSC are consistent with these observations. Under these rules, each party to a proceeding is entitled to notice of hearings, PSC 2.30;[6] to make motions and an opening statement, PSC 2.31(2); to present evidence, PSC 2.34; to cross-examine witnesses and present rebuttal evidence, PSC 2.37; to receive copies of prepared written testimony submitted by other parties, PSC 2.35(7); in the discretion of the hearing examiner, to receive copies of documentary evidence submitted by other parties, PSC 2.35(6); to take depositions of witnesses, PSC 2.39(3); to obtain review by the commission of a hearing examiner's evidentiary rulings, PSC 2.35(1)(a); to file briefs, PSC 2.38; to take exception to a hearing examiner's rulings, PSC 2.31(1); and to receive a copy of the PSC's decision, PSC 2.04. The rules imply, and considerations of due process also suggest, that copies of briefs, motions and other pleadings and documents would be required to be served on the various parties. *See:* PSC 2.05, 2.38(2).

Statutes are to be construed to avoid an unreasonable or absurd result. *Schwartz v. ILHR Dept.,* 72 Wis.2d

[6] References are to PSC Rules appearing in Vol. 9, Wis. Admin. Code.

217, 240 N.W.2d 173 (1976); *State ex rel. Lynch v. Conta,* 71 Wis.2d 662, 239 N.W.2d 313 (1976); *State ex rel. Wis. Elec. Power Co. v. Bardwell,* 71 Wis.2d 718, 239 N.W.2d 78 (1976). This court will always reject an unreasonable construction of a statute where a reasonable construction is possible. *Falkner v. Northern States Power Co.,* 75 Wis.2d 116, 248 N.W.2d 885 (1977).

A construction of sec. 227.16(1)(c), Stats. which accorded full party status, with all the participatory rights available under the PSC rules, *supra,* to each person entering an appearance, would work an absurd result. To permit each of hundreds of persons appearing in an agency proceeding to cross-examine witnesses, to make opening statements, and to depose witnesses, would produce a chaotic, unmanageable and interminable proceeding.

It is no doubt true that in most cases, relatively few of the persons appearing would actually exercise the panoply of rights available to full-fledged parties. Nevertheless, the construction urged by the PSC could result in paralysis of agency proceedings in a matter of controversy or great public interest, and would leave agency proceedings vulnerable to deliberate obstruction. In the present case more than thirty days of hearings were held, and the hearing transcripts are contained in 55 volumes. More than 100 persons appeared in the interim rate-increase proceedings, and 43 persons appeared in the proceedings for the permanent rate increases. In other, particularly controversial, cases the number of persons appearing and the size of the transcript are undoubtedly much larger. Yet, under the PSC's interpretation of the rules, every person appearing would be entitled, on proper request, to receive a copy of the hearing transcript without charge. PSC 2.36. The construction urged by the PSC would thus enable

any large group which was so inclined to strain the financial resources of the PSC and to delay the proceedings by demanding individual copies of the transcript.

Moreover, the cost of serving hundreds of nominal or non-participating parties with copies of all pleadings, motions and briefs would no doubt be prohibitive to many parties who would otherwise participate and challenge agency decisions. In addition, the cost of serving a petition for judicial review upon hundreds of parties would be substantial.[7] Because this approach would effectively preclude judicial review of agency decisions in many instances, we believe it is contrary to the purpose of ch. 227, Stats., which is to

" '. . . afford the appellant every opportunity to get into court and secure a reversal upon any ground that the statute may countenance, so long as he apprises his adversaries of the nature of his grievance at least by the time the appeal comes on for hearing.' " *Hamilton v. ILHR Department, supra,* at 689, *quoting Hoyt.*

Further, a definition of party which included all persons who appear would tend to frustrate the purposes of sec. 196.43, Stats., which prescribes a procedure for obtaining injunctions staying orders of the PSC. Under that statute, no injunction shall issue in a Chapter 227 review proceeding except upon proper application, notice to the commission and any other party, and hearing. No injunction delaying or suspending the effect of a PSC order may issue in any other proceeding unless all parties in the PSC proceedings are also made parties to the

---

[7] On judicial review, a petitioner would not be required to serve papers and notices upon all persons who had appeared before the agency. This is true because sec. 227.16(2), Stats., provides that every person served with the petition for review must serve a responsive notice of appearance within twenty days thereafter in order to participate in the proceedings for review. Only those persons serving such notices of appearance, or permitted to intervene in the proceeding, and the petitioner himself, are entitled to be served with subsequent papers and notices.

proceedings for an injunction. The difficulty of identifying and serving as many as hundreds of parties could well defeat the purpose of the injunction statute, which is intended to provide a swift remedy against imminent and irreversible harm. An order may become effective, and any inherent harm may become irreparable, before proper service can be made, if the construction urged by the PSC is adopted.

The availability of agency certification of parties reduces some of the objections to the approach proposed by the PSC. Under sec. 227.16(1)(c), Stats., an agency must, on the request of a petitioner for review, certify the names and addresses of the parties to the proceeding, and this certification is conclusive. The PSC's stated practice of communicating with all persons who appeared, and of certifying only those who express a desire to be treated as parties would reduce the number of persons to be served with the petition for review, thereby reducing the financial and procedural burden upon a petitioner. In addition, this approach would permit the persons who appeared to determine whether they wished to be treated as parties, rather than leaving this decision to the petitioner or to the active litigants.

The certification process is not without its own shortcomings, however. There is no guarantee that it will be consistently applied. PSC does not appear to be bound to any particular approach in certifying parties.[8]

In addition, certification may well be too slow a process to be used when a temporary injunction is sought, under sec. 196.43, Stats., which requires service upon all parties. No time limit is imposed on an agency in cer-

---

[8] In its brief, WED asserts that the PSC has demonstrated a "predilection . . . to play fast and loose with its ministerial certification duties. . . ." There is nothing in the record to support this assertion and it is forcefully denied by the PSC. Absent a record to the contrary, we assume the PSC properly complies with the certification statute.

tifying parties. In a temporary injunction proceeding, justice requires that the applicable procedure be such as to permit swift action to avoid irreparable damage to the parties.

We are of the opinion that policy concerns dictate that for the purposes of a Chapter 227 review proceeding, the PSC must distinguish the "principal parties" from other persons who appear. In reaching this conclusion, we recognize that present procedures of the PSC do not provide for formal admission of parties, by motion to intervene or otherwise, beyond the mere entry of an appearance, and the "principal parties" are not self-identifying.

This difficulty may not be as great as it first appears, however, and as a practical matter, the identity of the principal parties may be evident to all participants. WED maintains that in previous proceedings the PSC has consistently distinguished between principal litigants and nonparticipating persons; that this distinction was employed by the PSC and the other principal litigants in this case; and that WED served its petition for review on those litigants who, by their own consensus, were regarded as parties.

Again, this argument is founded largely on references to matters outside the present record. These matters outside the record, cited throughout the brief in chief and reply brief of WED, are in two categories. The first are matters before the PSC in unrelated proceedings. However, copies of the pertinent portions of the records referred to were not, with one exception, provided to the court. It is therefore inappropriate for this court to take judicial notice of the files and records of the PSC in these other proceedings.

The second category relates to documents and pleadings in the present proceeding which are not a part of

the record. WED has unilaterally submitted a list of 37 documents allegedly served in the present proceeding, along with a list of persons on whom they were served, to demonstrate that the PSC considered that there were five parties to this proceeding.

WED argues these documents were inadvertently omitted from the record when the PSC transmitted the record to the circuit court. Assuming that to be true, it remains the responsibility of the parties to have before the court the record which they wish the court to consider. If the record submitted to the court is for any reason incomplete or inadequate, it is the duty of the opposing party to have the record properly supplemented so that the court can fairly and completely consider the issues presented. So far as the record shows, no such motion to supplement the record was made in this case by WED or anyone else. This court can only consider the record which the parties present to it.

Although PSC and MG&E challenge the characterization of one of the documents listed by WED, actually neither of them dispute the accuracy of the list. It appears many of the documents were served or exchanged among the five "principal parties" recognized by WED. Some of the documents appear to have originated in the PSC and were directed to the five parties recognized by WED in its petition for review.

The evidence contained in the record, while it is not consistent, generally supports the argument that there was a small group of active litigants distinct from the general class of persons who signed the appearance list or slips. While neither complete nor consistent, the record generally supports the view that only five participants were considered to be parties actively participating in the proceeding.

We conclude that it is unreasonable to construe the term "parties" as used in sec. 227.16(1)(c), Stats., to include all persons who sign an appearance slip or list at a PSC rate proceeding. The term "parties" as used in sec. 227.16(1)(c) should be construed to mean those persons or entities which affirmatively demonstrate an active interest in the proceeding, and we conclude that it is incumbent upon the PSC to make the initial determination as to the identity of such parties.

This court has the power to fashion a remedy appropriate to the exigencies and needs of the case before it. *Hunter v. McDonald,* 78 Wis.2d 338, 346, 254 N.W.2d 282 (1977); *Town of Fond du Lac v. City of Fond du Lac,* 22 Wis.2d 525, 531, 532, 126 N.W.2d 206 (1964). We therefore direct that the PSC shall forthwith identify those principal parties in the instant proceeding who must be served with a petition for review pursuant to sec. 227.16(1)(c), Stats., and shall so advise these parties by mail. In view of the unusual posture of this case, any of the parties so identified may, within thirty days after service of such notice, file and perfect a petition for review of the PSC's order of November 9, 1976, notwithstanding the time limit specified by sec. 227.16 (1)(a).

We suggest that confusion and unnecessary litigation could be avoided by identifying the principal parties, for purposes of sec. 227.16(1)(c), Stats., prior to the issuance of a final order in proceedings before the PSC. Further, opportunity for orderly review would be enhanced if the parties were advised of the PSC's determination as to the principal parties simultaneously with issuance of the order in the proceedings.

The cause is reversed and remanded to the circuit court with directions to remand the case to the PSC for further proceedings not inconsistent with this opinion.

*By the Court.*—Judgment reversed and remanded.

SHIRLEY S. ABRAHAMSON, J. *(concurring in part and dissenting in part)*. The administrative determination which the Wisconsin Environmental Decade, Inc., et al. (hereafter appellants) sought to review in the circuit court was a Public Service Commission rate increase order which had been issued after several hearings were held on the matter from April through December 1975.

The P.S.C. moved to dismiss the petition for review on the ground that appellants had not served their petition on "all parties who appeared before the agency" as required by sec. 227.16(1)(c). The circuit court granted the motion to dismiss, and judgment was entered accordingly.

The majority opinion concludes that failure to serve "all parties who appeared" within the statutory time limits is a defect of subject matter jurisdictional import and that because this court cannot name "all parties who appeared," it cannot determine whether they were all served within the time limit. Accordingly the court reverses the circuit court judgment which dismissed the action on the ground that appellants had not served "all parties who appeared." The court also directs the circuit court to remand the case to the P.S.C. for its determination of "all parties who appeared." The court then "fashions a remedy" which permits the appellants to avoid the jurisdictional defect of having failed to satisfy the service requirement should the P.S.C.'s list of "all parties who appeared" include persons not originally served. The court allows any person named as a "party who appeared" by the P.S.C.—which presumably will include the appellants—to petition the circuit court for review, even though the statutory thirty-day period has ended. In other words, the statutory time limitations of sec. 227.16 begin again when the P.S.C. issues the list of "all parties who appeared."

I believe the majority opinion misinterprets the import of ch. 227. Although I would reach a result similar in

practical effect to the majority's, I would do so under a very different rationale. I would hold that failure to serve a "party who appeared" within the statutory time limit is not a subject matter jurisdictional defect which requires the dismissal of the review proceedings. I would reverse the circuit court judgment and remand the cause to the circuit court to permit the P.S.C. to file a list of "all parties who appeared" and the criteria it used in compiling the list.

Sec. 227.11, Stats., provides that "every decision when made, signed and filed shall be served forthwith . . . [on] each party to the proceedings . . . ." Sec. 227.16 (1) sets forth the procedure for instituting proceedings for review. Subsection (a) provides that "proceedings for review shall be instituted by serving a petition therefor . . . upon the agency . . . and by filing such petition in the office of the clerk of the circuit court . . . all within 30 days after the service of the decision of the agency upon all parties as provided in s. 227.11 . . . ." Sec. 227.16(1)(c) provides that "copies of the petition shall be served . . . not later than 30 days after the institution of the proceeding, upon all parties who appeared before the agency in the proceeding in which the order sought to be reviewed was made."

The statute thus clearly provides that review proceedings are *instituted* by serving the agency and filing the petition in court within the thirty-day period. Parties are served pursuant to sec. 227.16(1)(c) *after the proceedings are instituted.* Service on the agency and filing in court are jurisdictional requirements necessary to institute the proceedings. Service on the parties occurs after the circuit court acquires subject-matter jurisdiction. Failure to serve the parties should not deprive the circuit court of jurisdiction.

The legislature could have clearly stated that service on the parties is a jurisdictional requirement if it desired

that result. Compare the Iowa Administrative Procedure Act which explicitly makes service on the parties jurisdictional.

"Proceedings for judicial review shall be instituted by filing a petition . . . in the district court . . . . Within ten days after the filing of a petition for judicial review . . . copies of the petition shall be mailed by the petitioner to all parties . . . . Such mailing shall be jurisdictional . . . ." Sec. 17A.19(2), Iowa Code of 1977.

My analysis of sec. 227.16(1)(a) and (c), Stats., is in accord with *Hamilton v. ILHR Dept.,* 56 Wis.2d 673, 687, 203 N.W.2d 7 (1973). In that case Mr. Hamilton filed a complaint with DILHR charging that American Motors Corporation (AMC) had discriminated against him because of his race. DILHR ruled against Hamilton and Hamilton appealed, serving DILHR and AMC. Because of defects in both services, the attorney general moved to dismiss the petition for review. The circuit court entered an order dismissing the petition. This court held that, despite the defects in the service on the agency and in the filing of the petition in court, the service would be viewed as sufficient within sec. 227.16 (1)(a). Thus, this court concluded, the circuit court had subject-matter jurisdiction to review the agency determination. Even if service on AMC was defective, this defect did not affect the circuit court's acquiring subject-matter jurisdiction.

". . . Sec. 227.16(1), Stats., does not require A.M.C. to be served in order for the court's subject-matter jurisdiction to attach. Rather, one only need serve the department and file with the court. Service on A.M.C. is required in sub. (1) of sec. 227.16 within thirty days after the 'institution of the proceeding.'

"Service upon A.M.C. was not necessary for the court to obtain subject-matter jurisdiction—it was for the purpose of obtaining personal jurisdiction over one of

the parties appearing in the agency proceeding." *Id.* at 687.

This language from *Hamilton* is not limited to the peculiar facts of that case. Nor was the language withdrawn or overruled by this court in *Cudahy v. Department of Revenue,* 66 Wis.2d 253, 224 N.W.2d 570 (1974), a case which the majority views as controlling the case at bar. Indeed *Cudahy* sets forth no new law; it merely reiterates the rule set forth eleven years earlier in *Monahan v. Department of Taxation,* 22 Wis.2d 164, 167, 125 N.W.2d 331 (1963).

In *Monahan v. Dept. of Taxation,* 22 Wis.2d 164, 167, 125 N.W.2d 331 (1963) and *Cudahy v. Department of Revenue,* 66 Wis.2d 253, 224 N.W.2d 570 (1974), this court held that on review of a determination of the Tax Appeals Commission, failure to serve the Department of Revenue was a subject matter jurisdictional defect, and the circuit court lacked jurisdiction to review the Commission's determination. These cases are distinguishable from the case at bar because of the special statutory provisions relating to review of the Tax Appeals Commission. Sec. 227.16(1)(b) and (d), Stats. Although the Commission is the "agency" which makes the decision subject to review within sec. 227.16(1), the Department of Revenue is to be named "respondent" in the petition of review and is required to participate in the circuit court's review proceedings. Sec. 227.16(1)(b)(d), Stats. The statute has, in effect, substituted the Department of Revenue as the "agency" in lieu of the Tax Appeals Commission. Sec. 227.16(1)(b). Service on the Department is therefore necessary to institute the review proceeding. In a series of tax cases culminating in *Cudahy* the court has held that both the Tax Appeals Commission and the Department of Revenue must be served within the time limits prescribed by sec. 227.16(1), Stats., for the tax-

payer to invoke the subject matter jurisdiction of the circuit court.

I do not find these tax cases controlling in the case at bar. The tax cases, unlike the instant case, are governed by special statutes relating to the Tax Appeals Commission. The Department of Revenue in the tax cases is an "agency party" which is readily known to and identified for the petitioner and which must participate in the review proceedings. The instant case involves serving non-agency "parties" who may be numerous, who may not be known to or identified for the petitioner, and who need not participate in the review proceedings if they do not wish to do so.

On the basis of the statutes and the prior cases, I would hold that if the appellants failed to serve "all parties who appeared," dismissal of the petition is not required because service under sec. 227.16(1)(c) is not a matter of subject matter jurisdiction.

The result ultimately reached by the majority is inconsistent with its conclusion that a defect in service of non-agency parties is jurisdictional. The majority opinion concludes that failure to serve the parties within the time limit is jurisdictional, that the circuit court "lacks authority to extend the time for service" and that "if the petition was not served on the proper parties . . . dismissal was required." Nevertheless, at the close of the opinion the court comes to the rescue of the appellants, "fashioning a remedy" which gives the appellants an opportunity to proceed with judicial review of the P.S.C. decision even if they failed to comply with the jurisdictional requirement of serving "all parties who appeared." The cases the majority relies upon as enabling the court to "fashion a remedy" hold that a court of equity has the power to adapt its remedies to the exigencies and needs of the case. This equitable doctrine is applicable to cases where a court has subject-matter jurisdiction; it has

no relevance to the case at bar as viewed by the majority. If the defect is jurisdictional and the case at bar is governed by *Cudahy* and *Monahan,* as the majority holds, then, as the majority also notes, *Cudahy* and *Monahan* make clear that service of a notice of review, like service of a notice of appeal, within the time period specified, is an absolute prerequisite for jurisdiction and that the supreme court is without power to allow an appellant to serve notice after the expiration of the statutorily mandated period. In *Monahan* we held that this court cannot employ its discretionary power in the interest of justice (sec. 251.09, Stats.) to allow appellant to proceed with a petition to review, because the court cannot use sec. 251.09 "to confer jurisdiction where it does not already exist." 22 Wis.2d at 171. *See also Cudahy,* 66 Wis.2d at 259, and *Estate of Pitcher,* 240 Wis. 356, 361, 362, 2 N.W.2d 729 (1942).

The result which logically flows from the court's holding that a defect in service is jurisdictional is that appellants have no opportunity for review if they failed to serve "all parties who appeared." The result the majority reaches is contrary to the rationale of the majority opinion.

The majority directs the P.S.C., on remand, to decide now who were "all parties who appeared." Because identifying "all parties who appeared" before issuance of a decision would help to avoid confusion and unnecessary litigation, the majority *recommends* that hereafter agencies identify "all parties who appeared" prior to the issuance of the decision in the proceedings.

In my view, the statutory scheme *requires* an administrative agency to determine "all parties who appeared" no later than the time it issues its decision. The agency must identify "all parties who appeared" in order to serve a copy of its decision on them. The Wisconsin Administrative Procedure Act provides as follows:

"Every decision of an agency following a hearing shall be in writing accompanied by findings of fact and conclusions of law. . . ." Sec. 227.10, Stats.

"Every decision when made, signed and filed, shall be served forthwith by personal delivery, or mailing of a copy to each party to the proceedings or to the party's attorney of record." Sec. 227.11, Stats.

The statute whose interpretation is at issue in the instant case reflects the legislature's assumption that all the parties will be designated by the agency at least by the time a decision is made. This assumption also underlies the legislative requirement that for purposes of allowing a petitioner to serve a petition for judicial review of a decision, ". . . the agency upon request shall certify to the petitioner the names and addresses of all such parties [*i.e.*, 'all parties who appeared before the agency in the proceeding in which the order sought to be reviewed was made'] *as disclosed by its records,* which certification shall be conclusive." Sec. 227.16(1)(c) (emphasis added). The legislature clearly did not contemplate that the agency's determination of "all parties who appeared" would be made at a time when a review proceeding had already been instituted and a time limit on service was in effect.

The next issue requiring consideration is who are "all parties who appeared." We start first with the statute. The word "party" is defined in sec. 227.01(6) to mean "each person or agency named or admitted as a party. Any person whose substantial interests may be adversely affected by any proposed agency action in a contested case shall be admitted as a party." Unfortunately, this definition does not aid us in the instant case, because it appears that there was no procedure in the P.S.C. proceeding for naming persons as parties or for admitting persons as parties.

Sec. 227.16(1)(c) does not merely require service on all parties. It requires service "upon all parties *who*

*appeared before the agency in the proceeding."* It is unclear if the phrase "who appeared . . ." adds anything to the word party.

As the majority opinion points out, persons who "appear" as the P.S.C. uses the word "appear" in its rules, are not necessarily "all parties who appeared before the agency" in the proceeding upon whom service must be made pursuant to sec. 227.16(1)(c). The circuit court equated P.S.C. "appearances" with "all parties who appeared" and concluded that not "all parties who appeared" were served. I agree with the majority that it was unreasonable for the circuit court, on the record before it, to construe "all parties who appeared" as used in sec. 227.16(1)(c), Stats., as all persons who are listed by the P.S.C. as making an appearance. The flaw in the circuit court's reasoning is revealed by an examination of the P.S.C. "Findings of Fact and Order" which lists the persons who made "appearances." Among the 43 so listed are 12 members of the P.S.C.'s staff who "appeared" according to P.S.C. terminology but are conceded not to be parties.

The underlying premise of the majority opinion, with which I agree, is that determining who are "all parties who appeared" is an aspect of the total administrative decision-making process which the legislature has delegated to the agency. The criteria to be used in making the decision must necessarily reflect such factors as the nature of the agency proceeding, the nature and effect of the decision made, and the nature of the participation by those involved in the proceeding. The majority opinion properly concludes that it is the responsibility of each agency, and not of this court, to develop and announce such criteria appropriate to the proceeding involved. *Cf. State v. Goulette,* 65 Wis.2d 207, 216, 222 N.W.2d 622 (1974).

The majority properly cautions that in establishing criteria an agency must balance the public's interest in

allowing broad participation in the review proceeding and the practical financial difficulties of requiring the petitioner to serve a horde of persons. But the majority goes too far when it concludes "that it is unreasonable to construe the term 'parties' as used in sec. 227.16(1)(c), Stats., to include all persons who sign an appearance slip or list at a P.S.C. rate proceeding." I suggest that sometimes all such persons may very well be "parties who appeared" and other times they may not.

The majority opinion describes "parties who appeared" in a multitude of ways. The court indicates service is required upon "persons or entities which affirmatively demonstrate an active interest in the proceeding," "active litigants," "parties actively participating," "principal parties," "principal litigants," "proper parties," "litigants who, by their own consensus, were regarded as parties." It is not clear if the court is suggesting multiple criteria or a single criterion to guide agencies in identifying "parties who appeared."

Another incidental matter raised by the majority is the parties' references in their submissions to the court of matters not of record. On appeal the parties were faced with a peculiar problem. When the P.S.C. objected that not all "parties who appeared" were served, the appellants were limited to an administrative agency record which did not deal with the issue raised in the circuit court. Nor did the circuit court take evidence, sec. 227.20, Stats. (or order the P.S.C. to take evidence, sec. 227.19, Stats.) on the issue of who the P.S.C. viewed as "parties who appeared" or the P.S.C.'s criteria for designating "parties who appeared." Accordingly, on appeal there is a very limited record which would permit this court to review the circuit court's determination that service was not made on "all parties who appeared."

Both appellants and the P.S.C. have attempted to overcome the deficiencies of the record by including in their briefs discussions of P.S.C. procedures relating to "par-

ties" and "appearances." These discussions are not corroborated by evidence in the record. It is inappropriate for a court to consider matters outside the record. If the court is to consider the procedures and practice of an administrative agency not documented on the record, the parties must rely on the court's power to take judicial notice of the procedures and practices. Whether an appellate court will take judicial notice of a matter rests largely in the discretion of the court. Currie, *Appellate Use of Facts Outside of the Record by Resort to Judicial Notice & Independent Investigation,* 1960 Wis. L. Rev. 39. This court has frequently taken judicial notice of public records in the office of a state agency. *See* cases cited in Currie & Heffernan, *Wisconsin Appellate Practice Procedure* 50 (Rev. 1975). Under the circumstances of this case, the majority's chiding appellants for submitting P.S.C. records and summaries thereof relating to the P.S.C. practice of determining and serving "parties who appeared" is unwarranted. Appellants were not alone in going outside the record. The State also went outside the record. And the majority opinion inappropriately relies on the very material which it criticizes appellants for producing.

To summarize, I would reverse the judgment and remand the cause to the trial court with directions to order the P.S.C., which is objecting to the service, to file a list of persons who are "parties who appeared before the agency in this proceeding." If the appellants are willing to serve those persons appearing on the P.S.C. list, the trial court should grant the appellants a reasonable time to serve the persons. Sec. 801.15, Stats. When service is completed, the appellants should file an affidavit stating that they served the persons named by the P.S.C. as the "parties who appeared," and the review proceedings would go forth. If the appellants are unwilling to serve those persons on the P.S.C.'s list, the issue arises as to

the review available of the P.S.C.'s determination of "all parties who appeared." We need not face that question at this time.