# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2023AP583

†Petition for review filed

Complete Title of Case:

**LAUGHING COW, LP, RADS PARTNERSHIP, VIA CRESTA, L.P., WESTMAR, LTD, AND FINGER LIVING TRUST DTD OCT. 4, 1988,**

**PETITIONERS-APPELLANTS,†**

**V.**

**WISCONSIN DEPARTMENT OF REVENUE,**

**RESPONDENT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | February 29, 2024 |
| Submitted on Briefs: | September 14, 2023 |

| | |
|---|---|
| JUDGES: | Blanchard, Graham, and Nashold, JJ. |

| | |
|---|---|
| Appellants ATTORNEYS: | On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Don M. Millis* and *Olivia Schwartz* of *Reinhard Boerner Van Deuren s.c.*, Madison. |
| Respondent ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the brief of *Anthony D. Russomanno*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

February 29, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP583**

STATE OF WISCONSIN

Cir. Ct. No. **2022CV2101**

IN COURT OF APPEALS

LAUGHING COW, LP, RADS PARTNERSHIP, VIA CRESTA, L.P., WESTMAR, LTD, AND FINGER LIVING TRUST DTD OCT. 4, 1988,

    PETITIONERS-APPELLANTS,

  V.

WISCONSIN DEPARTMENT OF REVENUE,

    RESPONDENT-RESPONDENT.

 

APPEAL from an order of the circuit court for Dane County: NIA E. TRAMMELL, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

¶1 GRAHAM, J. Five entities that we collectively refer to as Laughing Cow appeal a circuit court order granting the Wisconsin Department of Revenue's

motion to dismiss Laughing Cow's petition for judicial review in this WIS. STAT. ch. 227 (2021-22) proceeding.[1] The court dismissed the petition on the ground that Laughing Cow failed to serve its petition on the Department in the manner specified by WIS. STAT. § 227.53(1). On appeal, Laughing Cow contends that its petition should not have been dismissed because it satisfied the statutory service requirements or because, even if it did not, it should be granted an exception from strict compliance with those requirements. We reject Laughing Cow's arguments and affirm.

## BACKGROUND

¶2 The following summary of undisputed facts is derived from the materials that the parties submitted with regard to the Department's motion to dismiss Laughing Cow's petition. As discussed in greater detail below, these submissions include sworn statements by an office manager who attempted to serve Laughing Cow's petition for judicial review on the Department, and sworn statements by three individuals who were working at the Department's headquarters on the day of the attempt at service: a security officer who staffed the Department's security desk; a tax specialist who staffed the Department's reception desk; and a Department employee who was expressly authorized to accept service on behalf of the Department.[2]

---

[1] All references to the Wisconsin statutes are to the 2021-22 version.

[2] Generally speaking, a WIS. STAT. ch. 227 review is confined to the administrative record that is compiled by the agency pursuant to WIS. STAT. § 227.55. *See* WIS. STAT. § 227.57(1). Here, however, the parties agree that the circuit court properly considered evidence that is extrinsic to the administrative record when ruling on the Department's motion to dismiss. The determination of whether a party has properly served its petition for judicial review of a final agency decision will necessarily turn on evidence that postdates the agency's decision
(continued)

¶3      This case began when Laughing Cow challenged several tax assessments in administrative proceedings before the Tax Appeals Commission. The commission issued a written decision, which rejected the challenges and affirmed the Department's tax assessments.

¶4      The commission's decision contained a section titled "Notice of Appeal Information," which advised Laughing Cow of its right to seek judicial review, as well as the filing and service requirements for initiating a petition for judicial review.  Consistent with WIS. STAT. § 227.53(1), the decision advised Laughing Cow that it was required to timely file any petition with the clerk of the circuit court and to timely serve the petition on both the commission and the Department.  The parties agree that Laughing Cow's petition had to be filed and served no later than August 24, 2022.

¶5      Laughing Cow filed its petition with the clerk of the circuit court on August 22, 2022.  Then, on August 23, it properly served the petition on the commission and, as further detailed in the following paragraphs, it attempted to serve the petition on the Department.

¶6      To that end, a paralegal at the law firm representing Laughing Cow gave three envelopes, each containing a copy of the petition, to the law firm's office manager, and sent the office manager to the Department's headquarters in

---

and that is extrinsic to the administrative record.  Because the Department's motion to dismiss for failure of service does not go to the merits of the Department's decision, the circuit court properly reviewed evidence extrinsic to the agency record when it ruled on the Department's motion.  *See* *Wisconsin's Env't Decade, Inc. v. PSC*, 79 Wis. 2d 161, 171-72, 255 N.W.2d 917 (1977) (concluding that a motion to dismiss for mootness, which would require the court to consider evidence extrinsic to the agency record, "does not conflict with the general provision that … judicial review, which goes to the merits of the case, be confined to the record").

Madison. One envelope was addressed to the Secretary of the Department, Peter Barca, and the others were addressed to attorneys in the Department's office of general counsel. The return address on each envelope indicated that it was from the law firm of Reinhart Boerner Van Deuren.

¶7 When later deposed, the office manager testified that she had been instructed to "take the document to the Department of Revenue for service on the three individuals." Beyond that, she testified that she did not know whether she was "initiating a lawsuit or not." And she could not recall any precise instructions that she had been given. Serving legal papers was a duty that the office manager performed only occasionally, and she could not recall how many times she had been asked to serve legal papers prior to her attempt to serve Laughing Cow's petition on the Department.

¶8 On the day in question, the office manager arrived at the Department's headquarters. The first floor reception area was open to the public, and a security desk and a customer service desk on that floor were staffed on weekdays from 7:30 a.m. to 4:30 p.m. The Secretary's office and other Department offices were located on other floors, and were not publicly accessible. If a visitor wished to meet with a Department employee, the visitor was required to check in at the security desk and then be escorted to the employee's office by a Department employee.

¶9 At the time the office manager attempted to serve Laughing Cow's petition, the Department had no written policy for accepting service of process. However, according to the deposition testimony of Emily Pegram, a Department employee who was "the first point of contact for accepting service papers on behalf of the Secretary," the Department had the following internal processes for

accepting service. Pegram testified that, if a process server arrived at the Department's headquarters and stated that they were there to serve the Secretary, the process server would be directed to the security desk, and the security officer would call Pegram.[3] If the security officer was unable to reach Pegram, the officer would then call a "very short list of people" who were also authorized "to accept service papers." At that time, there were four employees, including Pegram, who were authorized to accept service on the Department's behalf. The security and customer service desks were not authorized to accept service of process on behalf of the Department.

¶10 On the day that Laughing Cow attempted to serve the Department, the office manager arrived at the Department's headquarters at approximately 4:00 p.m. Upon her arrival, she stopped at the security desk, which was staffed by a security officer. During her deposition, the office manager could not recall precisely what she told the security officer—she was "certain" that she told him that she had "documents" for the three individuals whose names were listed on the envelopes, and that the documents "were from the law firm of Reinhart Boerner Van Deuren." However, the office manager did not recall using the phrase "legal documents," nor did she recall informing the security officer that she was there to "serve" those individuals. For his part, the security officer averred that the office manager said "something to the effect that she had documents to drop off," but he

---

[3] Although it is not material to the issue in this appeal, Pegram testified that she would take the following steps when she received a call from the security desk about a process server who had arrived to serve papers on the Secretary. Pegram would personally report to the security desk, ask the process server to sign, date, and print their name on a log, provide her information to the process server, take possession of the papers from the process server, take the service papers upstairs to the Department's offices, and then electronically log them into the Department's computer system.

was "certain" that she did not use the phrase "service of process" and did not tell him that she was there to "serve" the documents.

¶11    The security officer escorted the office manager to the customer service desk, which was staffed by a tax specialist who was employed by the Department.    At the customer service desk, the office manager told the tax specialist something to the effect that she "had papers for these three individuals." The tax specialist later testified that she often received papers at the customer service desk related to tax filings and response letters, and that she did not know that the office manager was attempting to serve a lawsuit.

¶12    The tax specialist and the security guard then conferred about what they should do with the documents.  At the conclusion of the conversation, the tax specialist indicated to the office manager that the tax specialist "would take the … envelopes."  The office manager gave the envelopes to the tax specialist and left. The tax specialist later testified that she mistakenly believed the documents to be property tax assessment appeals, which she had the authority to accept and store in a secure location overnight.  The parties agree that the office manager never asked the tax specialist whether she was authorized to accept service on behalf of the Department or the Secretary, and that the tax specialist never represented that she was authorized to accept service on the Department's or the Secretary's behalf.

¶13    After the office manager left, the tax specialist opened the envelopes and realized that the documents were not property tax assessment appeals, and were instead "legal document[s] of some sort."  In a sequence of events that are not material to the legal issue on appeal, the tax specialist stamped the documents with an August 23, 2022 date and sent an email about them to Kathy Traxler, who

worked in the Department's office of general counsel and was one of the individuals expressly authorized to accept service on the Department's behalf.

¶14    On the following morning at around 8:00 a.m., Traxler picked up the three envelopes containing copies of the petition for review, and she placed the envelopes in the mailboxes of the individuals to whom the envelopes were addressed.

¶15    As noted, the Department moved to dismiss Laughing Cow's petition for judicial review on the ground that Laughing Cow failed to serve the Department in the manner specified by WIS. STAT. § 227.53(1)(a)1.  Following discovery on the issue and the submission of briefing by the parties, the circuit court granted the Department's motion.[4]  The court concluded that, based on the undisputed facts, Laughing Cow failed to strictly comply with § 227.53(1)(a)1., and that the court therefore lacked competency to proceed.  Laughing Cow appeals.

## DISCUSSION

¶16    A person aggrieved by a state agency's final decision may seek judicial review of that decision pursuant to WIS. STAT. ch. 227.  As relevant here, to institute a proceeding for judicial review of an agency's final decision, a petitioner must file the petition with the clerk of the circuit court for the county in which the judicial review proceedings are to be held and "serv[e] a petition …

---

[4] In its appellate briefing, Laughing Cow describes the circuit court's order as granting summary judgment.  However, as the Department notes, the Department's motion was not for summary judgment, and was instead a motion to dismiss based on improper service.

personally or by certified mail upon the agency or one of its officials." *See* WIS. STAT. § 227.53(1)(a)1., (a)2., (c). "[S]trict compliance" with § 227.53(1) is required, *Currier v. DOR*, 2006 WI App 12, ¶23, 288 Wis. 2d 693, 709 N.W.2d 520 (2005), and if a petitioner fails to properly effectuate service, the circuit court lacks competency to proceed. *Wisconsin Power & Light Co. v. PSC*, 2006 WI App 221, ¶11, 296 Wis. 2d 705, 725 N.W.2d 423.[5] If the facts are undisputed, then the issue of whether a petitioner has served its petition in strict compliance with § 227.53(1)(a) presents a question of law that we review de novo. *Id.*, ¶8; *Currier*, 288 Wis. 2d 693, ¶9; *Weisensel v. DHSS*, 179 Wis. 2d 637, 642, 508 N.W.2d 33 (Ct. App. 1993).[6]

¶17 On appeal, Laughing Cow challenges the circuit court's dismissal of its petition on the ground that it failed to properly serve the Department. It first argues that it served its petition in compliance with WIS. STAT. § 227.53(1)(a); alternatively, it argues that it should be granted an exception from strict compliance with the statute's requirements. We address these arguments in turn.

---

[5] Some older cases that discuss the requirements of WIS. STAT. § 227.53(1) describe a petitioner's failure to comply with the statute as depriving the circuit court of *subject matter jurisdiction*. However, in *Village of Trempealeau v. Mikrut*, 2004 WI 79, 273 Wis. 2d 76, 681 N.W.2d 190, our supreme court clarified that, because the state constitution confers general subject matter jurisdiction on circuit courts, a party's failure to comply with a procedural statute does not deprive the court of subject matter jurisdiction; instead, the failure to comply with a procedural statute may limit the court's *competency* to exercise its jurisdiction. *Id.*, ¶12; *see also Currier v. DOR*, 2006 WI App 12, ¶6 n.2, 288 Wis. 2d 693, 709 N.W.2d 520 (2005) (citing *Kohler Co. v. Wixen*, 204 Wis. 2d 327, 337, 555 N.W.2d 640 (Ct. App. 1996)). Consistent with this clarification from *Mikrut*, more recent cases have described a petitioner's failure to comply with § 227.53(1) as depriving the circuit court of competency to exercise its jurisdiction. *See Currier*, 288 Wis. 2d 693, ¶6 n.2; *Wisconsin Power & Light Co. v. PSC*, 2006 WI App 221, ¶11, 296 Wis. 2d 705, 725 N.W.2d 423.

[6] Although the parties dispute certain historical facts, the parties do not argue that any of these disputes are material to the dispositive issue.

¶18 Laughing Cow first contends that the "undisputed facts demonstrate that [it] complied with WIS. STAT. § 227.53(1)(a)1. by timely serving the Petition on the Department" "'or one of its officials.'" However, Laughing Cow does not argue that it strictly complied with § 227.53(1)(a)1. and, as we now explain, such an argument would be unavailing.

¶19 The unambiguous language of WIS. STAT. § 227.53(1)(a)1. requires a petitioner to serve a petition either "personally or by certified mail upon the agency or one of its officials." However, a petitioner cannot "personally serve" the agency, as an entity, itself. *See Weisensel*, 179 Wis. 2d at 644-45. Instead, a petitioner who elects to serve the petition by personal service must personally serve an "official of the agency," *id.*, which WIS. STAT. § 227.01(7) defines as "a secretary, commissioner or member of a board of an agency,"[7] or a person who is not an "official of the agency," but who is nonetheless expressly authorized to accept service on the agency's behalf. *See Weisensel*, 179 Wis. 2d at 644-45.

¶20 Here, Laughing Cow elected to personally serve its petition. Therefore, Laughing Cow had to personally serve its petition upon an "official of the [Department]," *id.*, or an express designee. The parties appear to agree that, as of August 2022, Secretary Barca qualified as an "official" of the Department within the meaning of WIS. STAT. § 227.01(7), and that the Department had also expressly authorized several Department employees, including Pegram and Traxler, to accept service on the Department's behalf.

---

[7] *See also Weisensel v. DHSS*, 179 Wis. 2d 637, 644-45, 508 N.W.2d 33 (Ct. App. 1993) (explaining that in most instances, the secretary of a department will be the "official of the agency").

9

¶21 Laughing Cow acknowledges that it did not serve Secretary Barca. However, Laughing Cow points to the undisputed fact that "Traxler … had the Petition in hand by 8:00 a.m. on August 24, 2022, the last day for Laughing Cow to [timely] effectuate service," and it appears to argue that it personally served Traxler. As we now explain, this does not constitute personal service upon Traxler.

¶22 WISCONSIN STAT. § 227.53(1)(a)1. does not specifically define personal service. However, in the context of other statutes that address service of process, we have explained that personal service requires that "papers effecting service of process … be physically placed in the hands of the party to be served." *Ewing v. State Auto. Ins. Co.*, No. 2018AP2265, unpublished slip op. ¶¶17-18 (WI App. June 30, 2020) (discussing service under WIS. STAT. § 801.11, and concluding that the act of throwing a summons in the direction of a player on a baseball field from 20 feet above in the stadium stands and shouting "you have been served" did not amount to personal service).[8]

¶23 Here, it is undisputed that the office manager did not physically place Laughing Cow's petition in Traxler's hands. Nor, for that matter, did the office manager inform Traxler—or any other department employee—that she was

---

[8] We cite the authored, unpublished opinion in *Ewing* for its persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b). *Ewing v. State Auto. Ins. Co.*, No. 2018AP2265, unpublished slip op. ¶¶17-18 (WI App. June 30, 2020). The statute at issue in *Ewing* was WIS. STAT. § 801.11, which identifies alternative means of service if, "with reasonable diligence," the defendant cannot be personally served. *See* § 801.11(b), (c), (d). By contrast, the statute at issue here, WIS. STAT. § 227.53(1)(a), addresses personal service and service by certified mail, and does not identify any other alternative means of service.

there to serve a petition for judicial review.[9]  Instead, the office manager placed the petition in the hands of a tax specialist who was not an "official" of the Department, was not authorized to accept service of papers on the Department's behalf, and never represented herself to be authorized to accept service on the Department's behalf.  Although the tax specialist did ultimately forward the petition to Traxler, this does not constitute personal service upon Traxler or the Department.  *See* **Weisensel**, 179 Wis. 2d at 640-41, 646 (rejecting the notion that a petitioner complies with WIS. STAT. § 227.53(1)(a)1. by handing a petition to an agency employee who is not authorized to accept service on the agency's behalf, who then hands the petition to an employee who is authorized to accept service).  Therefore, Laughing Cow did not comply with § 227.53(1)(a)1.

¶24  In the alternative, Laughing Cow argues that, even if it did not comply with WIS. STAT. § 227.53(1)(a), it should be granted an exception from the statutory requirements because "the circumstances presented fall within the judicially-recognized exceptions to the statute's requirements."  To that end, Laughing Cow cites three cases in which our supreme court appeared to accept something less than strict compliance with certain statutory service requirements

---

[9] Laughing Cow argues that, in contrast to WIS. STAT. § 801.11(1)(b)1., which details alternative methods of effectuating service upon "natural person[s]," and which requires a server to inform an alternative recipient of the contents of the documents being served, WIS. STAT. § 227.53(1)(a)1. does not require a person attempting to serve an administrative agency to inform the recipient of the contents of the documents being served.  We need not decide whether Laughing Cow's interpretation of § 227.53(1)(a)1. is correct—as discussed above, the office manager did not comply with § 227.53(1)(a)1. because she did not physically place the petition in the hands of a person who was authorized to accept service on the Department's behalf.  Because that conclusion is dispositive, it is not necessary to address whether, had the office manager physically placed the petition in the hands of the Secretary or express designee, she was also required to inform the recipient that she was serving a petition for review.

based on the particular circumstances of the case.[10]  *See **Wisconsin's Env't Decade, Inc. v. PSC***, 84 Wis. 2d 504, 517-19, 267 N.W.2d 609 (1978) (concluding, among other things, that the fact that petitioner prematurely served its petition upon the agency did not deprive the circuit court of "subject matter jurisdiction");[11]  ***Evans v. Department of Local Affairs & Dev.***, 62 Wis. 2d 622, 625-28, 215 N.W.2d 408 (1974) (concluding that a faulty caption did not deprive the circuit court of "subject matter jurisdiction"); ***Hamilton v. DILHR***, 56 Wis. 2d 673, 688-89, 203 N.W.2d 7 (1973) (concluding that a pro se petitioner's failure to timely file his petition in the circuit court, and the fact that he served his petition on an agency employee who was not authorized to accept service, did not deprive

---

[10] The three cases cited by Laughing Cow involved a prior version of the statute that is now numbered WIS. STAT. § 227.53(1)(a).  For purposes of the personal service requirement, we see no material difference between § 227.53(1)(a) and the statutory language that was in effect when those three cases were decided, and neither side argues to the contrary.

Separately, the Department argues that Laughing Cow has forfeited any argument that it should be granted an exception from strict compliance because it did not make this argument or cite to these cases before the circuit court.  Although the brief that Laughing Cow filed in the circuit court did not cite the cases discussed above that involve exceptions to the rule of strict compliance, we will address their argument.  Laughing Cow generally argued in favor of an exception during the circuit court proceeding, albeit in a more oblique manner than it does on appeal, and the circuit court clearly understood that it was arguing in favor of an exception based on the precedent discussed above.  *See generally **Townsend v. Massey***, 2011 WI App 160, ¶¶19-27, 338 Wis. 2d 114, 808 N.W.2d 155 (generally discussing principles of forfeiture under Wisconsin law).

[11] In ***Wisconsin's Environmental Decade, Inc. v. PSC***, 84 Wis. 2d 504, 528-34, 267 N.W.2d 609 (1978), our supreme court also rejected an argument that the circuit court lacked "subject matter jurisdiction" on the ground that the petitioners failed to serve their petition on every one of 150 persons who had appeared during the administrative hearings.  Although some subsequent cases have described this conclusion as a court-created "exception" to strict compliance with the statute, we do not agree that that characterization of the court's decision is apt.  In rejecting the agency's argument, our supreme court determined that the statute does not actually require service on every single person who appeared during the administrative hearing.  Thus the petitioners complied with the statutory requirements in this respect and did not need an exception to proceed with their lawsuit.  *See **id.*** at 515, 519-34.

the circuit court of "subject matter jurisdiction" because the circuit court clerk unreasonably refused to file the petition and the agency employee who accepted service had misled the petitioner into believing that he was authorized to accept service on the agency's behalf). Laughing Cow interprets these cases as setting forth a broad general rule that a petitioner should be excused from strict compliance with § 227.53(1)(a)1. if the petitioner substantially complies with the statute by attempting to timely serve the responding agency; the petitioner is prevented from strictly complying by "the actions of others over whom it has no control";[12] and the responding agency received timely notice of the petitioner's claim and is therefore not prejudiced by the petitioner's failure to strictly comply with the statute.

¶25 Laughing Cow's attempt to distill a broadly applicable test from these three cases is unavailing. As we stated in *Weisensel*, 179 Wis. 2d at 647, the "exceptions" to strict compliance with WIS. STAT. § 227.53(1)(a)1. "are few and [are] limited to the facts of those particular cases." *Id.* Here, the facts of this case do not fit within the scenarios described in *Wisconsin's Environmental Decade*, *Evans*, or *Hamilton*. This case does not involve an attempt at service that was premature, *see Wisconsin's Environmental Decade*, 84 Wis. 2d 504; a faulty

---

[12] As we explain in the body of this opinion, we are not persuaded that the cases Laughing Cow cites set forth a broadly applicable test. We nevertheless pause to address Laughing Cow's argument that it was prevented from strictly complying with the statutory service requirements by the actions of others over whom Laughing Cow had no control. We reject Laughing Cow's repeated assertions that the Department "prevented" it from effectuating service of process by failing to "follow its own internal policies" for accepting service of process. This argument fails because it is undisputed that the office manager who arrived at the Department's headquarters never told the security guard, the tax specialist, or any other Department employee that she was attempting to serve the Department or the Secretary, such that the security guard, tax specialist, or some other Department employee would have had reason to follow the Department's policies for accepting service of process.

caption, *see Evans*, 62 Wis. 2d 622; or a clerk's unreasonable failure to file a pro se petitioner's petition, *see Hamilton*, 56 Wis. 2d 673.

¶26    It is true that, like Laughing Cow, the petitioner in *Hamilton* also failed to serve its petition on an official of the agency or express designee, and the court overlooked that failure.   However, the facts of *Hamilton* are readily distinguishable in all material respects from those at issue in this case.   In *Hamilton*, the petitioner was not represented by counsel, and was expressly misled through correspondence with an agency employee to believe that the employee was authorized to accept service on the agency's behalf.   *Id.* at 686.   Here, by contrast, Laughing Cow has been represented by counsel at every stage of this litigation, and its attorneys should have been aware that they were required to personally serve Secretary Barca or an express designee.   Additionally, Laughing Cow does not argue that it was misled by the Department's tax specialist, or by any other Department employee, to believe that the tax specialist with whom the office manager left the service documents was authorized to accept service on the Department's behalf.

¶27    Dismissal may be a harsh penalty for Laughing Cow's failure to comply with the statutory service requirements, but our cases have stated that "uniformity, consistency and compliance with procedural rules are necessary to maintain a simple, orderly and uniform system of conducting business in the courts." *Weisensel*, 179 Wis. 2d at 647 (citing *Miller Brewing Co. v. LIRC*, 173 Wis. 2d 700, 707, 495 N.W.2d 660 (1993)).   Even if equity would support an exception, we cannot make one here in light of our conclusion in *Weisensel* that exceptions to strict compliance with the statute "are few and [are] limited to the facts of" *Wisconsin's Environmental Decade*, *Evans*, and *Hamilton*.   *Weisensel*,

14

179 Wis. 2d at 647. *See **Cook v. Cook***, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (the court of appeals cannot overrule its prior opinions).

*By the Court.*—Order affirmed.